STATE OF HAWAII, Plaintiff-Appellee, *v.* DAVID F. TYRRELL, Defendant-Appellant

NO. 5987

NOVEMBER 16, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

18

OPINION OF THE COURT BY KIDWELL, J.

This appeal is from a conviction of murder in violation of HRS § 707-701. Appellant's opening brief states the victim and appellant were at appellant's home on a Sunday evening, both intoxicated. They commenced fighting, appellant hit the victim's head against some steps, and the victim fell from the steps to the ground. The next morning appellant and one Tongelao placed the victim in the trunk of appellant's car where he was later found dead. There was testimony that Tongelao had been seen jumping on a stick placed over the victim's neck and that Tongelao hit the victim on the back of the head with a rake. According to medical experts, death occurred as the result of a blow to the head.

In this appeal, appellant raises questions with respect to the disposition of a pretrial motion for a psychiatric examination to determine competency; the instructions given to the jury on voluntary intoxication and manslaughter; and the effectiveness of the assistance provided by appellant's counsel. The state of the record with respect to each of these issues will be outlined as we separately discuss the issues below. We affirm.

I.

Appellant contends that the trial court was both statutorily and constitutionally barred from proceeding with the trial

without more extensive inquiry into his competence to stand trial. The question of appellant's possible incompetence was raised prior to trial by appellant's motion for a mental examination under HRS § 704-404.[1] As support for the motion appellant's counsel submitted an affidavit stating his belief that appellant was mentally disturbed and reporting that appellant had been treated at mental health clinics for a chronic alcoholic problem. The affidavit also noted that a jail counselor had observed instances of irrational behavior and that the police investigation indicated appellant may have acted under extreme emotional distress. The motion sought a determination both of appellant's mental condition at the time of the alleged offense and at the present time.[2]

In response, the trial court ordered appellant examined by a State-employed psychiatrist. Approximately six weeks after the date of the order, the psychiatrist reported that, in his opinion, appellant neither demonstrated any indication of mental defect or disorder which would affect his criminal responsibility nor lacked substantial capacity to understand the proceedings against him and to assist in his own defense. There were no further pleadings or proceedings related to appellant's competency, and the case proceeded to trial.

The issue raised by appellant has two aspects. We must first consider whether HRS §§ 704-404 and -405 entitled appellant, upon his motion, to the appointment of a panel of

---

[1] HRS § 704-404 reads in part:

(1) Whenever the defendant has filed a notice of intention to rely on the defense of physical or mental disease, disorder, or defect excluding responsibility, or there is reason to doubt his fitness to proceed, or reason to believe that the physical or mental disease, disorder, or defect of the defendant will or has become an issue in the case, the court may immediately suspend all further proceedings in the prosecution. If a trial jury has been empanelled, it shall be discharged or retained at the discretion of the court. The dismissal of the trial jury shall not be a bar to further prosecution.

[2] Although appellant's motion for a mental examination asserted a belief that a mental examination was needed to determine whether appellant at the time of the offense suffered from any mental or emotional defect which would affect his penal responsibility, the failure of the trial court to order a statutory examination into appellant's condition at the time of the offense is not raised in this appeal.

three examiners and to a hearing upon their report on his competency. If we find no deprivation of a statutory right, then we must consider whether the procedure followed by the court afforded him due process as guaranteed by the fourteenth amendment of the United States Constitution and article I, section 4 of the Hawaii Constitution.

A.

HRS § 704-403 provides:

*Physical or mental disease, disorder, or defect excluding fitness to proceed.* No person who as a result of a physical or mental disease, disorder, or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures.

In order to carry out this mandate, under HRS § 704-404 the court may suspend all further proceedings whenever (a) the defendant has filed a notice of intention to rely on the defense of physical or mental disease, disorder or defect excluding responsibility, (b) there is reason to doubt his fitness to proceed, or (c) there is reason to believe that the physical or mental disease, disorder or defect of the defendant will or has become an issue. The statute further provides that upon such suspension, the court shall appoint a State-employed physician or psychologist and two additional "unbiased" physicians, or a physician and a psychologist, to examine and report upon the physical and mental condition of the defendant. The court may order the defendant committed to a hospital or other suitable facility for the purpose of the examination, and sets forth requirements with respect to the conduct of the examination and the content of the report.

The procedure upon receipt of the report is provided by HRS § 704-405. If there is no dispute as to the finding of the panel, the court may determine the defendant's competency on the basis of the report. If the finding is contested, then a hearing is required.

Appellant reads these statutes as requiring the appointment of a panel of examiners and the attendant right to a full hearing if the finding is disputed whenever the defendant's ability to stand trial is questioned. We do not agree.

As originally enacted in 1972, HRS § 704-404 provided that upon the occurrence of any of the three circumstances mentioned above, the court "shall" suspend further proceedings and appoint the panel of three examiners. By Act 136, Sess. L. 1973, the section was amended to substitute "may" for "shall". The legislative history indicates that the purpose of the change was to make the action of the court discretionary rather than mandatory. House Standing Committee Report No. 726, 1973; Senate Standing Committee Report No. 858, 1973. We conclude from this that the impanelling of a board of three examiners rests in the sound discretion of the court.

In the present instance, the court responded to appellant's motion by ordering an examination by a single psychiatrist. We view this action as an effort by the court to arm itself with another, more reliable opinion preparatory to exercising its discretion to proceed with the examination into appellant's competency by a panel of examiners as prescribed by statute. When the psychiatrist's report wherein appellant was found to be competent to stand trial was compared to the observations recorded in counsel's affidavit, the decision of the court to terminate the inquiry at that point was clearly within the discretion vested in it by § 704-404.

We hold that there was no abuse of the court's discretionary power. What was before the court was insufficient to compel the exercise of its discretion to proceed with a statutory examination into appellant's competency. Appellant has not contended that we could find, and we do not find, from the record before us that he was in fact so lacking in capacity that his trial was proscribed by § 704-403. Accordingly, he fails to show any deprivation of a statutory right.

B.

Failure of a state court "to observe procedures adequate

to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair. trial" in violation of the fourteenth amendment. *Drope v. Missouri,* 420 U.S. 162, 172 (1975). Since the issue is the defendant's incompetency, it is the duty of the trial court to order *sua sponte* a hearing on competency when what is before it sufficiently indicates that the defendant may be incompetent to stand trial. *Pate v. Robinson,* 383 U.S. 375 (1966). Where there is no dispute as to the relevant evidence before the trial court, it is for the reviewing court to determine what inferences are to be drawn from the undisputed facts and whether further inquiry into the defendant's competence was required. *Drope, supra* at 175.

Appellant would carry the constitutional analysis further and contends that in this case due process required that appellant be examined by a panel of three examiners in accordance with the statutory procedure. But appellant has referred us to no authority indicating that the statutory procedure is constitutionally mandated. The Court carefully points out in *Drope* that its conclusion that a statutory procedure is constitutionally adequate to provide the inquiry into competency required for due process does not imply that the statutory procedure must be followed in order to provide due process. 420 U.S. at 172. Moreover, no general standard has been prescribed in these cases with respect to the nature or quantity of evidence necessary to require resort to a constitutionally adequate procedure.

In *Robinson,* the trial court had before it evidence of a number of episodes of irrational behavior in the defendant's past, including the shooting of his infant son, an attempted suicide, efforts to burn his wife's clothing, fits of temper and abstraction, and incarceration in a state hospital. A majority of the Court held that the defendant's rational conduct at the trial and the failure of his counsel to suggest his incompetency did not justify the trial court's failure to initiate an inquiry into his competency. In *Drope,* an equivocal report had been presented by a psychiatrist, the defendant's counsel had expressed to the court his belief that the. defendant was not of sound mind, the defendant had tried to kill his wife on the eve

of trial and had attempted suicide during the trial. The Court found it necessary to review these circumstances at length in concluding that they made necessary an inquiry into his competency.

What was before the trial court in the present case fell far short of the accumulations of indicia of incompetency which were present in *Robinson* and *Drope*. It has not been suggested to us that anything in the record indicated a lack of present competency of appellant at the time of trial, other than the circumstances set out in counsel's affidavit. Whether or not the trial court was constitutionally mandated to do so, it responded to appellant's motion by ordering a non-statutory inquiry by a single psychiatrist, whose report may be regarded in one of two ways. On the one hand, the examination and report may constitute a constitutionally adequate procedure in response to the minimal indicia of incompetency before the court.[3] On the other hand, the psychiatrist's report may be viewed as an addition to the indicia before the court with respect to appellant's competency and as reducing the weight of any inference of incompetency below that needed to compel the institution by the court of a constitutionally adequate procedure for inquiring into appellant's competency. Whichever way it is regarded, we consider that the receipt of the psychiatrist's report termi-

---

[3] We do not endorse an examination by a single psychiatrist, based on a single interview with the defendant, as sufficient to remove the question of competency to stand trial in the face of evidence raising a substantial question of competency. See Pizzi, Competency to Stand Trial in Federal Courts: Conceptual and Constitutional Problems, 45 U. Chi. L. Rev. 21, 53 (1977). Here, however, the representation of appellant's counsel to the trial court that he believed that appellant was "currently mentally disturbed" was premised only on unspecified conduct during counsel's conferences with appellant, "some irrational behavior" noticed by a jail counselor and past treatment for alcoholism. Apparently counsel's doubt with respect to appellant's competency was satisfied by the psychiatrist's report, since he did not seek a hearing or further inquiry. It is true that the psychiatric examination of appellant was minimal, and would not have been sufficient to counter a more substantial doubt of appellant's competency. *Cf. Hill v. State,* 339 So. 2d 1382 (Miss. 1976). However, its acceptance by the trial court under the circumstances of this case did not deprive appellant of his due process right to a fair trial. *Arnold v. United States,* 432 F.2d 871 (10th Cir. 1970).

nated any due process requirement that the court proceed with the inquiry.

What we have said has been directed primarily to the due process requirements of the fourteenth amendment as laid down by the United States Supreme Court. We do not view article I, section 4 of the Hawaii Constitution as creating different standards of due process in the present context.

## II.

Appellant did not object to any of the instructions given by the trial court to the jury, but here contends the jury was so incorrectly instructed as to constitute either "plain error" within the meaning of H.R.P.P. Rule 52(b), fundamental error, or a violation of due process. He also contends that counsel's failure to object to the instructions demonstrates appellant was not afforded effective assistance of counsel, an issue which we deal with later in this opinion. In view of the interrelationship of these issues, we will proceed with consideration of the merits of the instructions, passing by the question whether the issues were properly preserved for appeal.

### A.

Appellant charges error in the instruction given on the effect of appellant's intoxication at the time of the offense. It is argued that by instructing the jury that "voluntary intoxication is not a defense to the commission of an offense" the court precluded the jury from considering the effect of intoxication on the intent required as an element of murder. A further instruction that intoxication might be considered by the jury "as to its effect on the state of mind required by law for the commission of the offense" is said to be erroneous because it fails to state expressly (a) that intoxication may negative the state of mind necessary to establish an element of the offense; (b) that appellant could not be found guilty of murder if specific intent were negatived; and (c) that voluntary intoxication can negative only the state of mind required

for murder and not the state of mind required for manslaughter.

In order properly to consider the points raised by appellant, the instruction complained of must be read in its context. The question on appeal is whether the entire instruction correctly charged the jury. *State v. Olivera,* 57 Haw. 339, 555 P.2d 1199 (1976). The relevant part of the instruction given by the trial court is as follows:

A state of mind, such as intent, knowledge, or awareness, may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear, and thus be able to give direct evidence of, what a person does or fails to do, there can be no eye-witness account of the state of mind with which the acts done or omitted. But what a person does or fails to do may indicate the state of mind with which he commits an act.

In determining the state of mind with which an act is done, the jury may consider the circumstances attending the act, the manner in which it is done, the means used, the sound mind and discretion of the person committing the act, and any statements made or other acts done or committed by him.

Evidence of voluntary intoxication has been introduced. The law is that voluntary intoxication is not a defense to the commission of any offense. However, intoxication may be considered by you as to its effect on the state of mind required by law for the commission of the offense.

The defendant is charged with the offense of Murder.

A person commits the offense of Murder if he intentionally or knowingly causes the death of another person.

There are three material elements to this offense, each of which must be proven beyond a reasonable doubt by the prosecution. The three material elements are:

First: That the defendant caused the death of another person.

Second: That the defendant caused such death intentionally or knowingly. The defendant did so intentionally

if he committed the specific act which caused death with the conscious purpose of causing death. The defendant did so knowingly if he committed the specific act which caused death with an awareness that such act was practically certain to cause death.

Third: That the person who committed the alleged killing was the defendant.

Appellant does not contend that the instruction misstates the law, but suggests that the jury might not recognize the difference between intoxication as a "defense" and as evidence bearing on appellant's state of mind, with the result that the jury might interpret the instruction as meaning that intoxication was of no legal effect whatsoever in determining appellant's guilt or innocence. A different question would have been presented if the sentence to which appellant points had appeared alone. Here it is preceded by an instruction dealing with the process of determination of appellant's state of mind and is followed by an instruction dealing with the state of mind which is an element of the offense. In language which we adopted in *State v. Travis*, 45 Haw. 435, 438, 368 P.2d 883, 886 (1962):

> The omissions or inaccuracies of one instruction may be cured by the contents of other instructions, or some of them, and if, when the instructions of the court are considered as a whole, they correctly state the law and are not inconsistent or misleading, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal.

The possibility that the jury might misinterpret the instruction appears to us to be too remote to be given credence, and we do not find the instruction as given to be erroneous.[4]

After retiring, the jury twice requested further instructions. On the first occasion, instruction was requested on the

---

[4] We agree with the Washington Supreme Court that, although the instruction was not erroneous, it would have been better practice for the trial court to refrain from use of the term "defense" in instructing the jury with respect to intoxication. *State v. Mello*, 79 Wash. 2d 279, 484 P.2d 910 (1971).

elements of murder and manslaughter. On the second occasion, an instruction was requested comparing "knowingly" to "recklessly". No additional instruction on the effect of intoxication was given in response to these requests. Appellant suggests that the jury exhibited its confusion with respect to the intoxication instruction which had been given, and thus made necessary the giving of a less misleading instruction, although not requested by counsel. However, we find no indication of a possible misunderstanding by the jury of the instruction on intoxication in the jury's uncertainty as to the state of mind required as an element of the offense. There was no error in the trial court's failure to provide further instructions on the effect of intoxication.

B.

The trial court's original instructions to the jury included the following:

The offense of Manslaughter is a lesser-included offense of Murder and is comprised of two material elements, each of which must be proved beyond a reasonable doubt by the prosecution.

The two material elements are:

(1) That the defendant caused the death of another person;

(2) That the defendant caused such death recklessly.

A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such death. A risk is substantial and unjustifiable if considering the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

The foregoing instruction, together with the instruction with respect to the elements of murder, was again read to the jury in response to their first request for further instruction.

In response to the second request, the court gave the following instruction with the consent of both counsel:

A defendant kills a victim recklessly when even though he may not have had the specific purpose in mind of killing the victim he nevertheless engages in conduct knowing that it creates a risk that the victim will die as a result of such conduct and the conduct is such as would not be engaged in by law-abiding persons.

If you find in this case that the defendant did not wish to have the victim die but he nevertheless was aware that what he was doing to the victim created a risk that the victim would die, then he would have caused the victim's death recklessly.

You will notice that in both "knowingly" and "recklessly" there need not be any desire on the part of a defendant to cause the death of the victim. The difference between the two states of mind is that in the case of knowingly, a defendant is aware that his conduct is practically certain to result in death even though he may not specifically intend that result, and that in the case of recklessly, a defendant may not be aware that his conduct is practically certain to cause death but he is aware that his conduct creates a risk that death could result.

Appellant contends that this instruction departed from the statutory definition of "recklessly". HRS § 702-206 provides in part:

(3) "Recklessly."

(a) A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that he engages in such conduct.

(b) A person acts recklessly with respect to attendant circumstances when he consciously disregards a substantial and unjustifiable risk that such circumstances exist.

(c) A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.

(d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

The modification of the definition of "recklessly" permitted the jury to find appellant guilty of manslaughter on a lesser standard of risk of death to the victim than as required by HRS § 702-206 and as had been required in the original instruction. The jury was informed that it was sufficient that appellant was aware of a risk that the victim might die and was permitted to so find without determining that applicant's disregard of the risk involved a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation. Had appellant been convicted of manslaughter upon this instruction it would be difficult to sustain the conviction. But appellant was convicted of murder. Appellant argues that, by lowering the standard required for manslaughter, the trial court deprived appellant of the opportunity to be found guilty of the lesser included offense of manslaughter. We are unable to perceive prejudice to appellant as the result of the instruction.

Contrary to appellant's argument, by lowering the standard required for a manslaughter conviction the trial court made it easier, rather than more difficult, for the jury to return a verdict finding appellant guilty of the lesser included offense. Prejudice exists in a failure to give a manslaughter instruction which the evidence supported, although the defendant has been found guilty of murder upon proper instructions, because the jury was thereby deprived of the opportunity to mitigate the offense to manslaughter. *State v. Warner*, 58 Haw. 492, 573 P.2d 959 (1977). The same cannot be said of an instruction which enlarged, rather than constrained, the jury's opportunity to mitigate the offense. The error in the instruction on manslaughter, if any, could not have prejudiced appellant. A defendant cannot complain of an erroneous instruction which benefits him. *United States v. Mc-*

*Gough*, 410 F.2d 458 (4th Cir. 1969); *Atwood v. People*, 176 Colo. 183, 489 P.2d 1305 (1971); *State v. Anstine*, 91 Idaho 169, 418 P.2d 210 (1966); *State v. Foster*, 284 N.C. 259, 200 S.E.2d 782 (1973); *State v. Nielsen*, 544 P.2d 489 (Utah 1975).

III.

Appellant asserts the representation provided by his privately-employed counsel at trial did not afford effective assistance of counsel as guaranteed by both the United States and Hawaii constitutions. In the view we take of counsel's representation of appellant, we need not consider the extent to which this guarantee applies to privately-employed counsel. In *State v. Kahalewai*, 54 Haw. 28, 30, 501 P.2d 977, 979 (1972), we said that effective counsel is not errorless counsel but counsel whose assistance is "within the range of competence demanded of attorneys in criminal cases." The manner in which this test is to be applied was defined as follows:

> In cases where the adequacy of counsel is in question, we must first examine the record with appellant's allegations in mind, to determine whether, viewed as a whole, the assistance provided appears to have been below the level of ordinary competence demanded of lawyers in criminal cases. If this examination shows that defenses crucial to appellant's case could have been, but were not raised, or that trial counsel inexplicably failed to assert appellant's constitutional rights, the case will be examined further to determine whether counsel's actions were the result of informed judgment or constitutionally inadequate preparation. The issue of informed judgment, . . . is only relevant where the actions or inactions resulting from that judgment seem unreasonable. If this were not so, every criminal conviction would be vulnerable on appeal to the allegation or admission that trial counsel's choice of defenses or tactics, reasonable on the surface, had actually been made in gross ignorance of important rules of law. 54 Haw. at 32, 501 P.2d at 980 (footnote omitted).

The performance of counsel for appellant is alleged to have fallen below this standard in his failure to insist upon a

psychiatric examination of appellant in accordance with the procedures specified in HRS § 704-404 and to request a hearing on the issue of competency in accordance with HRS § 704-405. However, on the record before us, we cannot assume that counsel was aware of any indication, not made known to the court, of a physical or mental disease, disorder or defect which would exclude appellant's penal responsibility or which would show appellant lacked capacity to understand the proceedings against him or to assist in his own defense. The indicia of appellant's lack of competency, so far as known to his counsel, were made known to the court. We have no reason, on this record, to doubt that the court adequately considered and weighed the evidence, including the report of the single psychiatrist, in determining that the § 704-404 procedures should not be instituted. It is not apparent that further insistence by counsel would have been fruitful.

Moreover, a decision by counsel not to subject his client to the rigors of an examination pursuant to § 704-404 cannot be considered unreasonable on its face. The examination may entail confinement in the state hospital for a period of thirty days or longer. We do not know, in the present case, whether counsel consulted with his client as to the merits of this procedure in view of the dim prospect of obtaining an advantage. At the least, a delay in setting the case for trial might have had to be taken into consideration. It may be open to debate whether a rule should be developed to compel counsel for a defendant to raise the issue of his client's competency to stand trial notwithstanding his opinion that it is not in his client's best interests. *See* Pizzi, *Competency to Stand Trial in Federal Courts: Conceptual and Constitutional Problems*, 45 U. Chi. L. Rev. 21, 29 n.1 (1977). Nevertheless, it seems clear that counsel's decision not to press for a § 704-404 examination of appellant's competency cannot be considered one which necessarily reflects incompetency or neglect on the part of counsel.

Appellant also charges ineffectiveness of counsel in failing to object to the allegedly erroneous instructions. In view of our holding that the instruction on intoxication was not er-

roneous, counsel cannot be considered incompetent or neglectful to the extent of ineffectiveness in accepting it, whether or not there might have been room for some improvement in its language. With respect to the instruction on manslaughter, we cannot consider as unreasonable a decision by counsel to refrain from objecting to an error which increased the possibility that the jury might find his client guilty of a lesser offense. We conclude that the record before us does not disclose that appellant failed to receive effective assistance of counsel.

The judgment is affirmed.

*Alvin T. Ito*, Deputy Public Defender, for defendant-appellant.

*Paul H. Toyozaki*, Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff-appellee.