977 P.2d 183

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Douglas NUPEISET, Defendant–Appellant.**

**No. 20870.**

Intermediate Court of Appeals of Hawai'i.

March 31, 1999.

As Amended April 13, 1999.

---

Caroline M. Mee, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff-appellee.

Frank M. Fernandez, on the brief for defendant-appellant.

WATANABE and ACOBA, JJ., and Circuit Judge CHANG in place of BURNS, C.J., Recused.

Opinion of the Court by ACOBA, J.

Defendant–Appellant Douglas Nupeiset (Defendant) was convicted of murder in the

second degree, Hawai'i Revised Statutes (HRS) § 707–701.5 (1993),[1] of Jeffery Fuller (Fuller), and sentenced to life imprisonment with the possibility of parole under a July 21, 1997 Judgment of Conviction and Sentence.

On July 29, 1997, Defendant appealed. He raises three arguments on appeal. As to his first argument, we hold that the first circuit court (the court) did not err in denying Defendant's motion for a mistrial based on a juror's passing acquaintance with Fuller's father. As to the second argument, we hold that with respect to the defense of defense of others, the court did not reversibly err in (a) striking paragraphs 8 and 9 of Defendant's supplemental jury instruction No. 3 (instruction 3) having to do with a defendant's duty to retreat, and (b) denying Defendant's supplemental jury instruction No. 4 (instruction 4) concerning a defendant's requisite knowledge of circumstances justifying use of force. As to his third argument, we hold the court was not required to instruct the jury on the "choice of evils" defense. Therefore, we affirm the Judgment of Conviction and Sentence.

### I.

■ Defendant's first argument is that the court abused its discretion in denying Defendant's motion for mistrial (the motion) based on a juror's acquaintance with Jerry Fuller, Fuller's father.

After the jury was sworn, the prosecutor informed the court that Fuller's father had recognized William Cross (Cross), the twelfth juror seated in the jury box:

[Prosecutor]: All he said was the victim—the juror in the white shirt. And apparently he's acquainted from, I guess, golf. I guess he played on opposing teams, or something of that nature in golf. *He had said that juror doesn't know his son. And I think, you know, that the reason he might—that he may not know him is because [Fuller]'s father and [Fuller] have been, I guess, estranged[. T]hey* haven't seen each other for five years. I guess there was like a falling out with the father and son.

So I know we did say in the beginning— that the [c]ourt did read the indictment at the very beginning of the trial. And I think [Cross,] if he knew who the person was[,] he would have brought it to the [c]ourt's attention because I know that we did cover that in voir dire.

The court and counsel then examined Cross outside of the presence of the other jurors:

[Court]: Have a seat. I just wanted to ask you a question—well, a couple—well, point out a couple of things. First of all, I know you've been very attentive and you've listened to my instructions. And I'm sure you're aware of my instruction relating to witnesses. In other words, if you recognize the witness, you know, during the trial, you bring it to my attention through the bailiff. Obviously, you haven't. You haven't done that, so I assume you haven't recognized anybody—any witnesses.

I want to extend that a little further and ask you if you've recognized any people who were in the gallery? When we say gallery, I'm talking about out there or outside[.]

[Cross]: I know the Fullers[.] I don't know what they're doing here.

[Court]: The Fullers?

[Cross]: Jerry Fuller and his wife were sitting over there yesterday.

[Court]: Okay.

[Cross]: And I have seen them outside—

[Court]: Okay.

[Cross]:—sitting on the far back towards the johns.

[Court]: How do you know the Fullers?

[Cross]: *He—oh, I have known them for years, but not very closely. He was a*

---

1. Hawai'i Revised Statutes (HRS) § 707–701.5 (1993) states:

   **Murder in the second degree.** (1) Except as provided in section 707–701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

   (2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706–656.

*member of Waialae [Country Club] for a long time.* He is with Hawaiian Trust Company now. He was a stock broker. He was with First Hawaiian Bank. *I've just known him, but not well.*

[Court]: Okay.

[Cross]: *I've played golf with him.*

[Court]: Okay. When was the last time you had any, I guess, contact with him?

[Cross]: Define contact[.] Okay, I mean, I walk by[.] I say, hey, Jerry, okay[?]

[Court]: I guess whether you had any type of meaningful conversation with him, a while back or just recently?

[Cross]: A long while back playing golf, you can have that putt, that was it, okay.

[Court]: *So most of your contact is on the golf course?*

[Cross]: *That's correct.*

[Court]: Okay. Not through work?

[Cross]: *Not through work.*

[Court]: *And not through any social means?*

[Cross]: *That's correct.*

[Court]: Well, other than golf, if you want to consider golf social?

[Cross]: I don't, but go ahead.

[Court]: I will disclose this to you because you probably put two and two together. If you recall the victim—the name of the complainant in this case, the last name is Fuller[. T]hey are related.

[Cross]: *I recall that, but I didn't draw a link between them.*

[Court]: They are related?

[Cross]: Yeah.

[Court]: It doesn't matter how they're related, but they're related. Is that going to make any difference to you?

[Cross]: *It doesn't make any difference to me.*

(Emphases added.)

During the voir dire examination by defense counsel, Cross again denied that his knowledge of a relationship between Fuller and Jerry Fuller would influence him:

Q. Forgive me, please, I am quite concerned. If there is a family relationship, you don't know the extent of that relationship is what you're saying, what it is?

A. *I don't know[.] I didn't know there was a relationship to begin with because I didn't put two and two together, okay.*

Q. Okay.

A. All right.

Q. But you've—you referred to him by his first name[,] Jerry[. H]ow you doing, Jerry?

A. That's correct.

Q. And there is some realization that there, as the Judge has disclosed, there is some type of relationship, family relationship, but the exact nature you do not know?

A. That's correct.

Q. Have you speculated on what the relationship might be?

A. Not in the least until it was just brought up.

Q. Okay. And is [it] your firm belief that it would not in any way influence the way you decide this case?

A. *That's correct.*

(Emphases added.)

On appeal, Defendant maintains that Cross's "relationship with the family members of [Fuller] ... would cause him to be biased." This court has determined that "'the paramount question in determining whether to excuse for cause a prospective juror is whether the defendant would be afforded a fair and impartial trial based on the law and evidence, with the prospective juror as a member of the jury.'" *State v. Cardus*, 86 Hawai'i 426, 438, 949 P.2d 1047, 1059 (App.1997) (quoting *State v. Baron*, 80 Hawai'i 107, 114, 905 P.2d 613, 620 (1995)) (citations omitted). The question would remain the same when dismissal for cause is sought after the juror is sworn.

In *Cardus*, this court stated that the decision to remove a juror for cause "'must be left to the sound discretion of the trial judge who is in a better position than the appellate court to ascertain from the answers of the juror whether the juror is able to be fair and impartial.'" *Id.* (quoting *Baron*, 80 Hawai'i at 114, 905 P.2d at 620). Likewise, here, the

court was in a "better position" to determine whether Cross was able to be fair and impartial.

The court examined Cross, heard defense counsel's examination of Cross, and observed Cross's demeanor. The court was satisfied with Cross's assurances that his knowledge of the relationship between Fuller and Jerry Fuller would not "make any difference." While the court would have acted properly by excusing the juror and thus obviating this point on appeal, we cannot say, based on the record, that the court abused its discretion in not doing so.

■ Although Defendant could have requested that Cross be dismissed and replaced with an alternate juror, Defendant did not request this, but instead moved for a mistrial. When a party moves for a mistrial, "[a]s a general rule, it is for the circuit court to determine whether a ... mistrial is warranted." *Cardus*, 86 Hawai'i at 438, 949 P.2d at 1059 (internal quotation marks and citations omitted). "The denial of a motion for mistrial is reviewed under an abuse of discretion standard." *Id.* (citing *State v. Loa*, 83 Hawai'i 335, 349, 926 P.2d 1258, 1272, *reconsideration denied*, 83 Hawai'i 545, 928 P.2d 39 (1996) (citations omitted)). It cannot be said that the court abused its discretion in denying the motion. Defendant offers no evidence as to why Cross's answers were suspect. As already stated, the court was satisfied with Cross's testimony that he could remain impartial, and that his knowledge of Jerry Fuller's relationship to Fuller would not affect Cross's ability to be a fair juror.

Quoting *State v. Kauhi*, 86 Hawai'i 195, 200, 948 P.2d 1036, 1041 (1997), Defendant argues that regardless of Cross's testimony, the instant case represents an "extreme situation[ ] that would justify a finding of implied bias." (Internal quotation marks, citation, and emphasis omitted.) However, the Hawai'i Supreme Court, quoting Justice O'Connor of the United States Supreme Court, set forth certain examples where such an implied bias may be found: " 'a revelation that the

juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.' " *Id.* (emphasis omitted) (quoting *Smith v. Phillips*, 455 U.S. 209, 221–22, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring)). In our view, the situation here does not rise to the level of any of those examples. Cross admitted to seeing Fuller's father on the golf course and to knowing him by name. This "revelation" does not appear to be similar to the examples provided in *Kauhi*. Therefore, Cross cannot be deemed to have had an inherent or implied bias toward Defendant. The court, thus, did not err in denying the motion.

## II.

Defendant's second argument is that the court abused its discretion when, with respect to the defense of "defense of others," it (a) struck paragraphs 8 and 9 of instruction 3 having to do with a defendant's duty to retreat, and (b) refused instruction 4 having to do with a defendant's knowledge of circumstances justifying the use of force. Pertinent to this case, Defendant had testified that Fuller had been choking Defendant's brother, Robson Nupeiset (Robson), when Defendant went to Robson's aid and stabbed Fuller.[2]

■ " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given [were] prejudicially insufficient, erroneous, inconsistent or misleading.' " *State v. Kinnane*, 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)) (emphasis omitted).

## III.

■ Instruction 3 must be examined in the

---

**2.** Six transcripts have been made a part of the record on appeal. They concern jury selection, the court's examination of juror William Cross, settlement of the jury instructions, and the testi- mony of Defendant–Appellant Douglas Nupeiset (Defendant). There are no transcripts in the record containing any other proceedings at trial.

context of the justification defenses[3] of the use of force in the defense of others and the use of force in the defense of oneself. We discuss the statutory provisions relating to instruction 3 first.

### A.

The justification defense based on defense of others is codified in HRS § 703–305 (1993), which provides:

**Use of force for the protection of other persons.** (1) Subject to the provisions of this section and of section 703–310,[4] *the use of force upon or toward the person of another is justifiable to protect a third person when:*

  (a) Under the circumstances as the actor believes them to be, the person whom the actor seeks to protect would be justified in using such protective force; and

  (b) The actor believes that the actor's intervention is necessary for the protection of the other person.

  (2) *Notwithstanding subsection (1):*

  (a) *When the actor would be obliged under section 703–304 to retreat,* to surrender the possession of a thing, or to comply with a demand before using force in self-protection, *the actor is not obliged to do so before using force in the protection of another person, unless the actor knows that the actor can thereby secure the complete safety of such other person; and*

  (b) *When the person whom the actor seeks to protect would be obliged under section 703–304 to retreat,* to surrender the possession of a thing or to comply with a demand *if the*

*person knew that the person could obtain complete safety by so doing, the actor is obliged to try to cause the person to do so before using force in the person's protection* if the actor knows that the actor can obtain the other's complete safety in that way; *and*

  (c) *Neither the actor nor the person whom the actor seeks to protect is obliged to retreat when in the other's dwelling* or place of work to any greater extent than in the actor's or the person's own.

(Emphases added.)

HRS § 703–305 is nearly identical to *Model Penal Code and Commentaries* § 3.05 (Official Draft and Revised Comments 1985) [hereinafter MPC].[5] HRS § 703–305 generally "extends the defense of justification to include the use of physical force to protect another person on the same terms as the defense is available for the use of force in self-protection [under HRS § 703–304]." Commentary on HRS § 703–305. As expressly set forth, HRS § 703–305(2)(a) and (b) qualify an actor's use of force on behalf of the person intended to be protected, conditioned in both cases on whether the actor or the person, respectively, would be under a duty to retreat as described in HRS § 703–304 (1993).[6] Subsections 2(a) and (b) together require

"that the actor need not retreat ... before using force in protection of a third person unless he knows that he can ... still assure the complete safety of that person. He is obliged, however, to attempt to secure the retreat of the third person in situations where the third person [would be] obliged by [HRS § 703–304] to retreat."

MPC § 3.05 at 66.

Under HRS § 703–305(2)(c), however, neither the actor nor the person is required to

---

**3.** HRS § 703–301(1) (1993) provides, "In any prosecution for an offense, justification, as defined in sections 703–302 through 703–309, is a defense." The term justification defense itself is not defined but an "extended definition is given in [each one of] the sections which follow" HRS § 703–301. Commentary on HRS § 703–301.

**4.** HRS § 703–310 (1993) is discussed later in the text.

**5.** Unlike HRS § 703–305 (1993), the *Model Penal Code and Commentaries* § 3.05(1)(a) (Official

Draft and Revised Comments 1985) [hereinafter MPC] also requires that the actor employ such force as the actor believes would be employed in defending himself or herself against the same threat. *Id.* at 62.

**6.** By referring to HRS § 703–304 (1993), HRS § 703–305(2) "assimilates the rules of [HRS § 703–304] regarding retreat, surrender of possession, and compliance with demands[.]" *See* MPC § 3.05 at 63.

retreat when in each other's dwelling "to any greater extent than in the actor's or the person's own." *See* MPC § 3.05 at 63.

### B.

The circumstances under which one acting in self-defense must retreat is outlined in HRS § 703–304. It states, in relevant part:

**Use of force in self-protection.** (1) Subject to the provisions of this section and of section 703–308,[7] the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself [or herself] against the use of unlawful force by the other person on the present occasion.

. . . .

(3) *Except as otherwise provided in subsections (4)* [8] *and (5) of this section, a person employing protective force may estimate the necessity thereof under the circumstances as he [or she] believes them to be when the force is used without retreating,* surrendering possession, doing any other act which he [or she] has no legal duty to do, or abstaining from any lawful action.

. . . .

(5) The use of deadly force is not justifiable under this section if:

(a) *The actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself [or herself] in the same encounter;* or

(b) *The actor knows that he [or she] can avoid the necessity of using such force with complete safety by retreating* or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he [or she] abstain from any action which he [or she] has no duty to take, except that:

(i) *The actor is not obliged to retreat from his [or her] dwelling . . . unless he [or she] was the initial aggressor* [.]

(Emphases added.)

HRS § 703–304(1) "requires a belief by the actor that the use of protective force is actually necessary and that unlawful force . . . is to be used by the assailant" "on the present occasion." Commentary on HRS § 703–304.

HRS § 703–304(3) "states the generally applicable rule that the actor need not retreat or take any other evasive action before estimating the necessity for the use of force in self-protection." Commentary on HRS § 703–304.

HRS § 703–304(5) proscribes the use of deadly force in two situations. Subsection (5) provides that

[d]eadly force may not be used if the actor provoked his [or her] assailant's use of force against himself [or herself] in the same encounter with the purpose of causing death or serious bodily injury. . . . The· use of deadly force is also denied when the actor can avoid using it with complete safety by retreating[.]

Commentary on HRS § 703–304. HRS § 703–304(5)(b)(i), however, "states that the actor is not required· to retreat from his [or her] dwelling . . . unless he [or she] was the initial aggressor[.]" Commentary on HRS § 703–304.

From the foregoing, it is clear that an appropriate instruction on the defense of the defense of others must interrelate provisions of HRS §§ 703–305 and –304. Although instruction 3 failed to properly do this, we conclude this failing was not reversible error.

### C.

Instruction 3 embodied parts of *[Hawai'i] Standard Jury Instructions,* Criminal (HAWJIC) No. 7.02 Defense of Others (1997).[9] Instruction 3 was submitted to the

---

7. HRS § 703–308 (1993) concerns the use of force to prevent suicide or the commission of a crime and is not germane to this case.

8. Subsection (4) of HRS § 703–304 is a companion provision to HRS § 703–304(5) but is not

quoted because it is not involved in the arguments of the parties.

9. The *Hawai'i Standard Jury Instructions,* Criminal (HAWJIC) (December 1991) is a product of the cooperative effort of judges and attorneys to encompass and to standardize rules of law in

court in pertinent part, as follows, and was read to the jury without paragraphs 8 and 9:

[1] [10] Justifiable use of force in defense of another person is a defense to the charges of Murder in the Second Degree, Manslaughter based on extreme mental or emotional disturbance, Assault in the First Degree, and Assault in the Second Degree based on intentionally or knowingly causing substantial bodily injury to another person. The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the Defendant was not justifiable. If the prosecution does not meet its burden, then you must find the Defendant not guilty.

[2] In this case, the use of deadly force by Defendant upon or towards [Fuller] is justified to protect [Robson] when:

[3] (1) Under the circumstances as [Defendant] reasonably believed them to be, [Robson] would have been justified in using such force to protect himself; and

[4] (2) [Defendant] reasonably believed that his intervention was immediately necessary to protect [Robson].

[5] The reasonableness of the Defendant's belief that the use of such protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in ... Defendant's position under the circumstances of which ... Defendant was aware or as ... Defendant believed them to be.

[6] [Robson] would have been justified in using deadly force upon or toward [Fuller] if [Robson] reasonably believed that deadly force was immediately necessary to protect himself on the present occasion against death or serious bodily injury.

[7] *The use of deadly force is not justifiable if [Defendant] knew that [Robson], with the intent of causing death or serious bodily injury against [Fuller], provoked the use of force against [Robson] in the same encounter, or if the Defendant knew*

*that [Robson] could have avoided the necessity of using such force with complete safety by retreating.*

[8] *[Defendant] has no duty to retreat before using force to protect [Robson] unless the [sic] he knows that he can thereby secure the complete safety of [Robson].*

[9] *If [Robson] could have avoided the necessity of deadly force with complete safety by retreating, then [Defendant] was obligated to try to cause [Robson] to do so before using force in the protection of [Robson]. However, neither [Defendant] nor [Robson] is obliged to retreat when in [Robson]'s dwelling to any greater extent than in his own.*

(Emphases added.)

**D.**

At the May 7, 1997 conference to settle the jury instructions, Plaintiff–Appellee State of Hawai'i (the State) asserted that paragraphs 8 and 9 were not relevant to the facts of this case. Defense counsel, on the other hand, contended that the paragraphs should be included "because it is the law."

In striking paragraphs 8 and 9, the court stated, "Okay. Well, the [c]ourt obviously is of the position that these two paragraphs are nothing but surplus. They're not applicable in this factual setting, and the paragraph preceding these two stricken paragraphs deals with the situation adequately."

On appeal, Defendant claims, without more explanation, that it was error to strike these paragraphs because Defendant's "brother, Robson, was being choked by another," it was "the prosecutor's burden to show that [Defendant] knowingly could have secured Robson's safety by retreating[,]" and that "the issue in paragraph 6 ... [was] distinctly different." We note that Defendant fails to cite to any evidence in the record or any argument made by the prosecution which would support the giving of paragraphs 8 and 9.

---

jury instructions, and is widely used by the circuit courts. *State v. Toro,* 77 Hawai'i 340, 348, 884 P.2d 403, 411 (App.1994). The instructions, however, are not binding on the Hawai'i appellate courts. *Id.*

**10.** In order to facilitate reference to different parts of Defendant's supplemental jury instruction No. 3 (instruction 3) as referred to by counsel, each paragraph in the instruction is identified by a bracketed number.

### E.

#### 1.

As proposed to the court, paragraphs 7, 8, and 9 are statutorily related. The first clause of paragraph 7 purportedly disqualifies Defendant's use of deadly force based on knowledge that Robson provoked the use of force against himself with the intent of causing death or serious bodily injury to another person, and thus, under HRS § 703–304(5)(a), forfeited the defense of self defense. The second clause of paragraph 7 also disqualifies Defendant's use of such force on knowledge that Robson used deadly force when he could have safely retreated, and thus, under HRS § 703–304(5)(b),lost the defense of self defense.[11] Paragraph 8 bans Defendant's use of force in coming to Robson's aid if Robson's complete safety could be secured as provided in HRS § 703–305(2)(a). Paragraph 9 prohibits Defendant's use of force in coming to Robson's assistance if Robson could have retreated with complete safety and Defendant failed to try to cause Robson to do so as required in HRS § 703–305(2)(b). The effect, then, of the court's ruling, was to retain limitations on the use of deadly force set out in the defense of self defense in HRS § 703–304(5)(a) and (b), and to delete limitations on the use of force to protect others, as set out in HRS § 705–305(2)(a) and (b). The deletion of paragraphs 8 and 9 thus made instruction 3 an incomplete statement of the law, and, accordingly, potentially misleading to the jury.

#### 2.

While paragraph 7 is not addressed by the parties, it was the only one of the three related paragraphs on which the jury was instructed, and therefore, our analysis must focus on paragraph 7.

##### a.

The first clause of paragraph 7 refers to Defendant's hypothetical knowledge of an assumed provocation by Robson. HRS § 703–304(5)(a) removes justification for the use of deadly force "if the actor provoked his [or her] assailant's use of force against himself [or herself] in the same encounter with the purpose of causing death or serious bodily injury." Commentary on HRS § 703–304. It is questionable whether the foregoing proscription, as contained in the first clause of paragraph 7, would be relevant to Defendant's use of force in the situation where he intervened to protect Robson.

##### b.

The second clause of paragraph 7 refers to Defendant's knowledge of Robson's ability to safely retreat. Under HRS § 703–304(5)(b), Robson himself would be legally prohibited from "[t]he use of deadly force . . . when [he] . . . can avoid it with complete safety by retreating." Commentary on HRS § 703–304. However, Defendant's knowledge that *Robson* could safely retreat would only be pertinent to Defendant's obligation under HRS § 703–305(2)(b) to try to cause Robson to retreat. That obligation was stated in the struck paragraph 9, and thus the jury was never informed of it.

##### c.

█ Additionally, we note that HRS § 703–305(2)(c) indicates that "[n]either the actor nor the person whom the actor seeks to protect is obliged to retreat when in the other's dwelling." As given, the second clause of paragraph 7 focused solely on Defendant's hypothetical knowledge that Robson could have safely retreated. The second clause, therefore, failed to advise the jury, as the omitted paragraph 9 did, that Robson's assumed duty to retreat and Defendant's purported duty to cause Robson to retreat would be extinguished if the duty arose "when in the other's dwelling." HRS § 703–305(2)(c).[12]

---

11. We do not reach the question of whether paragraph 7 in its entirety is a correct statement of the law.

12. Plaintiff–Appellee State of Hawai'i (the State) argues that the bathroom in which the incident took place was a "common area" and not part of the dwelling of Defendant's brother, Robson Nupeiset (Robson). "Dwelling," for purposes of HRS chapter 703, is defined in HRS § 703–300 (1993), as "any building or structure, though movable or temporary, *or a portion thereof,*

### 3.

■ While the retention of paragraph 7 and the omission of paragraphs 8 and 9 made instruction 3 an incomplete statement of the law, we believe any error in giving it was harmless.

#### a.

First, there was no evidence to support the hypothetical circumstances contained in paragraph 7. As to the first clause of paragraph 7, there was no evidence that Defendant knew Robson intended to cause the death of or serious bodily injury to Fuller. Defendant testified that Robson went into the bathroom when Fuller was showering. Defendant reported that Robson did not say anything which caused him to believe Robson was going to start a fight. According to Defendant, Robson did not appear to be "angry or upset" about anything, but only said he was "gonna talk to the guy." Defendant thought nothing of it. Defendant's next encounter with Robson and Fuller occurred when he forced his way into the bathroom after hearing "pounding ... [l]ike someone banging up against the wall[ ]" and someone saying, "I'm going to nail you." Thus, there was no evidence from which the jury could find, under paragraph 7, that Defendant knew Robson intended to cause death or serious bodily injury to Fuller; the evidence was to the contrary.

As to the second clause of paragraph 7, there was no evidence Defendant knew Robson could have retreated with complete safety. According to Defendant, after he pushed the bathroom door open and entered, he saw Fuller choking Robson. Defendant stated Robson was unsuccessful in attempting to free himself from Fuller's grip. Defendant tried to "grab[ ] [Fuller]'s waist" and "pull" him away. However, Fuller still did not "release[ ] his grip on [Robson]'s neck[.]" Defendant pushed his "shoulder [in] to [Fuller]'s side" to no avail. According to Defendant, Robson's eyes closed and Robson's hands, which had been attempting to pull Fuller's hands from his neck, went "loose." At that point, Defendant "felt like [he] had to do something[,]" and left the bathroom, went into Robson's room, and "grabbed [Defendant's] knife from inside [a] drawer." The foregoing evidence forecloses any determination under paragraph 7 that Defendant knew Robson could have retreated with complete safety.

#### b.

Second, the omission of paragraphs 8 and 9 did not prejudice Defendant.

Paragraph 8, based on HRS § 703–305(2)(a), prescribes a duty to retreat on the part of Defendant if he could do so and still secure Robson's complete safety. As pointed out above, there was no evidence that Robson's complete safety could be secured if Defendant retreated.[13] Since there was no evidence that would make paragraph 8 operative, the failure to inform the jury that Defendant had no duty to retreat under that circumstance could not have affected the jury's verdict.

Paragraph 9 imposes a duty on Defendant to cause Robson to retreat before employing force in Robson's defense if *Robson* was under a duty to retreat and could safely do so. This is an apparent restatement of the qualification on use of force set forth in HRS

---

which is for the time being a home or place of lodging." (Emphasis added.)

The question of whether the bathroom was part of Robson's "dwelling" is a question of fact to be resolved by the jury. This question, however, would never be considered by the jury in the absence of relevant instructions. Paragraph 9 of instruction 3, which was stricken by the court, informed the jury of Defendant's obligation to try to cause Robson to retreat and the extinguishment of the duty "when in [Robson's] dwelling." It thus was correct to that extent.

The parallel provision in HRS § 703–304(5)(b)(i), which pertains to the use of deadly force in self-defense, subjects the dwelling exception to the further qualification that it not apply if the person was "the initial aggressor." None of the parties discuss the relevance, if any, of this provision.

**13.** The State argues, apparently with respect to paragraph 8 of instruction 3, that "the evidence does not support giving" it. The State maintains that because Defendant testified that "Fuller was choking Robson and Robson was unable to pry Fuller's hands loose[,] ... there was no evidence that Defendant's retreat would have in any way altered Fuller's behavior."

§ 703–305(2)(b). The deletion of this qualification·set a lower standard of justification for Defendant's use of force than that permitted under HRS §§ 703–304 and –305, and thus, could not have prejudiced Defendant. As the State points out, the Hawai'i Supreme Court has held a defendant "cannot complain of an erroneous instruction which benefit[ted] him." *State v. Tyrrell*, 60 Haw. 17, 29, 586 P.2d 1028, 1036 (1978).[14]

As to the dwelling exception referred to in the last sentence of paragraph 9, it only applies where a duty to retreat is in issue. The second clause of paragraph 7 does refer to a duty to retreat. But as pointed out in the discussion of that clause, there was no evidence to support a duty to retreat on Defendant's part.[15] Therefore, the omission of a reference to the dwelling exception was not prejudicial to Defendant in the absence of evidence imposing that duty.

c.

Since there was no evidence to support the hypothetical circumstances posited in paragraphs 7, 8 and 9 and the omission of paragraph 9 relieved Defendant of any duty to cause Robson to retreat, we conclude that the giving of paragraph 7 and the rejection of paragraphs 8 and 9 was harmless error. *See* Hawai'i Rules of Penal Procedure Rule 52(a).

IV.

We examine instruction 4 next. It states:

If you find that at the time he intervened, [Defendant] knew that [Robson], with the intent of causing death or serious bodily injury, provoked the use of force against [Robson] in the same encounter, or that at the time he intervened, [Defendant] knew that [Robson] could have avoided the necessity of using such force by retreating, then the Defendant is not entitled to rely

on the defense of justification. However, if you find that, *at the time he intervened, [Defendant] did not know whether [Robson], with the intent of causing death or serious bodily injury, provoked the use of force against [Robson]* in the same encounter; or if you find that *at the time he intervened, [Defendant] did not know whether [Robson] could have avoided the necessity of using such force by retreating, or if you find that [sic] the time he intervened, [Defendant] did not have a reasonable opportunity to acquire such knowledge, or if you find that* at the time he intervened, *[Defendant] had a reasonable belief that [Robson] was without fault,* the [Defendant] is entitled to rely on the defense of justification based on defense of another.

(Emphases added.) On appeal, Defendant fails to set out a specific basis for claiming error in the refusal of instruction 4.

When instruction 4 was refused by the court during the settlement conference, defense counsel argued that this instruction was

necessary to clarify for the jury the issue of what [Defendant] had to do with ·respect to finding out about what happened, or whether [D]efendant had adequate knowledge or an opportunity to obtain knowledge of what happened.... All this instruction does is tell [the jury] when [Defendant] may or may not rely on the defense of others.

The court refused this instruction, stating, "Okay.... I think this is just maximizing the argument relating to the use of deadly force."

After reiterating the disqualifying circumstances for using force as set forth in paragraph 7 of instruction 3, instruction 4 advises that Defendant remained entitled to the defense of defense of others if he lacked knowl-

---

**14.** In *State v. Tyrrell*, 60 Haw. 17, 29, 586 P.2d 1028, 1036 (1978), the defendant was given a manslaughter instruction that lowered the threshold for the mens rea of "recklessness" from its statutory definition. The supreme court stated, "The error in the instruction on manslaughter, if any, could not have prejudiced appellant." *Id.*

**15.** The State contends that the evidence did not support the first sentence of paragraph 9 of instruction 3 because, according to the State, Defendant had testified that "Fuller choked Robson into unconsciousness[,] ... [and thus] there was no evidence that Robson could have retreated at all, much less with safety."

**186**

edge of such disqualifying circumstances, and additionally, lacked "a reasonable opportunity" to acquire such knowledge or had a "reasonable belief that Robson was without fault."

### A.

The defense of defense of others is subject to a further limitation stated in HRS § 703–310 (1993) for reckless or negligent knowledge or conduct[16] of the actor.

We note, first, that insofar as HRS § 703–310(1) applied to potential convictions of Defendant for offenses requiring a reckless state of mind,[17] it does not mention lack of a "reasonable opportunity" to acquire knowledge material to the defense of justification or a reasonable belief that the protected person was "without fault" as excusing circumstances. HRS § 703–310(1) states:

Provisions generally applicable to justification. (1) When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under sections 703–303 to 703–309 *but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief* which is material to the justifiability of the actor's use of force, the justification afforded by those sections is unavailable in a prosecution for an offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

(Emphasis added.) HRS § 703–310(1) is couched in terms precluding the use of force defense where the actor is reckless or negligent in his belief that force is necessary or in acquiring that belief or knowledge. In such a case, "the actor does not have a defense of justification for any crime as to which recklessness or negligence suffices to establish culpability." Commentary on HRS § 703–310.

16. HRS § 703–310(2) applies to reckless or negligent conduct of an actor in the use of force and is not in issue.

17. In this case, HRS § 703–310(1) only applied, as the court instructed, to reckless conduct.

The State maintains, and we agree, that the law with respect to HRS § 703–310(1) was adequately set forth in paragraph 12 of instruction 3, which was essentially a restatement of the reckless element of HRS § 703–310(1):

If and only if you find that *[Defendant] was reckless in having a belief* that he was justified in using deadly force against [Fuller], *or that [Defendant] was reckless in acquiring or failing to acquire any knowledge or belief* which was material to the justifiability of his use of deadly force against [Fuller], then the use of such deadly force is unavailable as a defense to the offenses of Manslaughter *based on reckless conduct* and/or Assault in the Second Degree *based on recklessly causing serious bodily injury* to another person.[18]

(Emphases added.)

### B.

We believe that paragraph 5 of instruction 3 satisfied the premises of instruction 4 with respect to all other potential offenses presented to the jury for its consideration. Paragraph 5 required that the jury evaluate Defendant's belief that the use of force was necessary from the viewpoint of a reasonable person faced with the circumstances of which Defendant was aware or as Defendant believed them to be. In our view, this instruction would adequately cover Defendant's purported lack of reasonable opportunity to acquire knowledge material to the defense or his reasonable belief that Robson was "without fault." Thus, we conclude the court did not err in refusing instruction 4.

### V.

Finally, Defendant maintains that the court "denied [his] choice of evils defense." Defendant contends that the choice of evils defense was "crucial" to his case, but fails to explain why it was.

18. Paragraph 12 was part of instruction 3. There is no objection raised on appeal to the language used in paragraph 12.

The State maintains Defendant waived any error because he withdrew his instruction on this defense. The record reflects that Defendant's proposed instruction No. 5, which outlined the requirements of the choice of evils defense, was withdrawn. Defendant provides no explanation as to why he withdrew the instruction.

Secondly, the State asserts that the choice of evils defense is only available if the penal code does not "provide[ ] exceptions or defenses dealing with the specific situation involved[.]" HRS § 703–302(1)(b) (1993). Plainly, "[u]nder HRS § 703–302(1)(b) the court is not to instruct the jury on the [choice of evils] defense if 'the [Hawai'i Penal Code] or other law defining the offense provides exceptions or defenses dealing with the specific situation involved[.]' " *State v. Maumalanga*, 90 Hawai'i 96, 109, 976 P.2d 410, 423 (App.1998) (Acoba, J., concurring and dissenting), *cert. granted*, 90 Hawai'i 58, 976 P.2d 372 (1998) (adopting concurring and dissenting opinion).

The commentary reiterates the distinction between "[n]ecessity [which] has been accepted as a defense at common law" and "other defenses which are predicated on a threat to person or property[.]" Commentary on HRS § 703–302. Since the case here, as the State points out, "was covered by the defense of [']defense of others ... ['] under [HRS §] 703–305 and, possibly, self-defense under [HRS §] 703–304[,]" HRS § 703–302 does not apply. The State is obviously correct, and there is no merit to Defendant's contention that the court erred in omitting a choice of evils instruction.

### VI.

For the foregoing reasons, we affirm the court's July 21, 1997 judgment of conviction and sentence.