63 P.3d 1097

STATE of Hawai'i, Respondent/Plaintiff–
Appellee,

v.

Raymond K.K. AUGUSTIN,
Petitioner/Defendant–
Appellant.

No. 23105.

Supreme Court of Hawai'i.

Dec. 17, 2002.

Arthur E. Ross, Honolulu, for petitioner/defendant-appellant Raymond K.K. Augustin, on the writ.

MOON, C.J., LEVINSON, NAKAYAMA, JJ.; and ACOBA, J., dissenting, with whom RAMIL, J., joins.

### ORDER DISMISSING CERTIORARI PROCEEDING

We dismiss the petitioner/defendant-appellant Raymond K.K. Augustin's application for a writ of certiorari as improvidently granted because the summary disposition order of the Intermediate Court of Appeals in *State v. Augustin*, 97 Hawai'i 570, 40 P.3d 972 (Haw. Ct.App.2001), contains no grave errors of law or fact and is not obviously inconsistent with the appellate case law of this state. *See* Hawai'i Revised Statutes (HRS) 602–59(b) (1993).

We disagree with Augustin that that part of the trial court's instructions advising the jury to consider Augustin's justification claims "from the viewpoint of a reasonable person in [Augustin's] position under the circumstances of which [Augustin] was aware or as [Augustin] reasonably believed them to be" was prejudicially incorrect, because the instructions in question—derived from Hawai'i Pattern Jury Instructions—Criminal (HAWJIC) 7.01 ("Self–Defense") and 7.02 ("Defense of Others")—are fully consonant with the controlling statutory and case law of this state.

For purposes of the present appeal, the material language of the trial court's jury

instructions regarding self-defense and defense-of-others was as follows:

> The reasonableness of the defendant's belief that the use of such protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware *or* as the defendant reasonably believed them to be.

(Emphasis added.) The foregoing language derives from the statutory defenses of "use of force in self-protection," as codified in HRS § 703–304 (1993), and "use of force for the protection of other persons," as codified in HRS § 703–305. HRS § 703–304 provides in relevant part:

> (1) ... [T]he use of force upon or toward another person is justifiable when the actor *believes* that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.
>
> . . . .
>
> (3) ... [A] person employing protective force may estimate the necessity thereof *under the circumstances* as he *believes* them to be . . . .

(Emphases added.) Similarly, HRS § 703–305 provides in relevant part:

> (1) ... [T]he use of force upon or toward the person of another is justifiable to protect a third person when:
>
> (a) *Under the circumstances* as the actor *believes* them to be, the person whom the actor seeks to protect would be justified in using such protective force; and
>
> (b) The actor *believes* that the actor's intervention is necessary for the protection of the other person.

(Emphases added.)

■ With respect to the use-of-force defenses, the defendant's belief must be "reasonable," *see* HRS § 703–300 (1993) ("'Believes' means reasonably believes."). Moreover, a defendant may only be charged with "knowledge" of those "circumstances" of which he or she is actually "aware." *See* HRS § 702–206(2)(b) (1993) ("A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist."). That is why,

> [u]nder Hawai'i law, the standard for judging the reasonableness of a defendant's belief for the need to use deadly force is determined from the point of view of a reasonable person in the [d]efendant's position *under the circumstances as he believed them to be.* The jury, therefore, must consider the circumstances as the [d]efendant subjectively believed them to be at the time he tried to defend himself.

*State v. Pemberton,* 71 Haw. 466, 477, 796 P.2d 80, 85 (1990) (emphasis in original) (citation omitted). It is therefore error to judge the reasonableness of a defendant's viewpoint based on circumstances "shown in the evidence" but of which the defendant is not "aware." *Id.* at 477–78, 796 P.2d at 85. The fact remains, however, that the defendant's belief regarding the immediate necessity of the use of protective force must be reasonable. *See* HRS § 703–300.

■ HAWJIC Instructions 7.01 and 7.02 come right out of the Hawai'i Penal Code and *Pemberton* and cover all possible conditions under which a defendant can prevail with respect to his or her use-of-force defense. *Either* the prosecution will fail to disprove beyond a reasonable doubt (1) that a reasonable person (objective standard) in the defendant's position would believe that the use of protective force was immediately necessary, given the circumstances of which he or she was *actually* (*i.e.*, subjectively) aware *or* (2) that a reasonable person (objective standard) in the defendant's position would believe that the use of protective force was immediately necessary, given the circumstances (subjective) as the defendant reasonably (*i.e.*, objectively) but perhaps mistakenly (objective) believed them to be. Both conditions cannot be present simultaneously. Accordingly, it would be erroneous, misleading, and confusing to require the substitution of the conjunctive "and" for the disjunctive "or" that the trial court utilized in its use-of-force instructions in the present case.

Augustin's other points of error raised in his application for a writ of certiorari are likewise without merit.

For the foregoing reasons, Augustin's application for a writ of certiorari is hereby dismissed as improvidently granted.

Dissenting Opinion by ACOBA, J., in which RAMIL, J., joins.

Petitioner/Defendant–Appellant Raymond K.K. Augustin (Petitioner) petitioned this court for a writ of certiorari to review the Summary Disposition Order (SDO) of the Intermediate Court of Appeals (ICA) in *State v. Augustin,* 97 Hawai'i 570, 40 P.3d 972 (Haw.Ct.App.2001) [hereinafter "ICA opinion"]. In its SDO, the ICA affirmed the January 10, 2000 judgment of the first circuit court (the court), adjudging Petitioner guilty of Murder in the Second Degree, Hawai'i Revised Statutes (HRS) § 707–701.5 (1993), of Larry Basuel, and of Place to Keep Pistol or Revolver, HRS § 134–6(c) and (e) (1993). The judgment was rendered after Petitioner's third jury trial [1] which began on September 20, 1999.

In his application for certiorari, Petitioner argues *inter alia* that, as to his justification defenses of defense of self and defense of others, "[t]he court's instructions, in conjunction with the prosecutor's arguments misstating the law of justification, misdirected the jury by requiring it to apply a wholly objective standard rather than [by] judg[ing] the reasonableness of Petitioner's actions from his point of view." I believe Petitioner's application should have been granted primarily to clarify the state of our case law with regard to the use of force defense to protect oneself or others—the issue raised in Petitioner's first point on certiorari. *See State v. Hanson,* 97 Hawai'i 71, 73, 34 P.3d 1, 3 (2001) (affirming ICA opinion, but granting certiorari "[i]n light of Defendant's objections, . . . to clarify the basis for upholding airport security searches"); *Korsak v. Hawaii Permanente Med. Group,* 94 Hawai'i 297, 300, 12 P.3d 1238, 1241 (2000) (granting certiorari

"to clarify several aspects of the ICA opinion").

I.

A.

The following relevant evidence, essentially from Petitioner's testimony, was adduced at trial. On New Year's Day of 1994, Larry Basuel was awakened from a nap at the home of Petitioner's sister and brother-in-law, Raelyn and Andy Basuel. Larry became violent, grabbed a gun out of a bag and said, "[Y]ou guys think you guys can screw with me? This is 1994, new year, nobody screws with me no more. Sick and tired of all this shit. You guys aren't screwing me no more." When Petitioner tried to calm Larry down, Larry told him to "shut up, unless [he] want[ed] some too." Larry then exited the house, waved the pistol around, and repeatedly screamed, "Anybody come outside." Larry's behavior made Petitioner feel "[s]cared."

Six months later, on June 11, 1994, Petitioner, his wife Julie, and their two-month-old baby attended a barbeque gathering at the Basuel home. Larry was also there. Petitioner brought a gun with him because Larry had expressed an interest in buying it. According to Petitioner, Larry revealed that he had a firearm with him as well.

At about 6:00 to 6:30 in the evening, Larry approached Petitioner, who was holding his sleeping baby, and "went to pat [the baby] on the back." Petitioner did not want the baby awakened because she was fussy and told Larry as much. Petitioner requested that Larry leave the baby alone, and Larry "got a little angry" and began to ·shake the baby "harder." Larry then taunted Petitioner and asked whether Petitioner would "shoot him."

After this exchange, Larry sat in the garage and "just kept asking if [Petitioner was] mad at him and if he was gonna use his nine

---

1. In June 1994, Petitioner had been charged with Murder in the Second Degree of Larry Basuel and with Place to Keep a Pistol or Revolver. Petitioner's first jury trial began on June 5, 1995, but a mistrial was declared on June 28, 1995, due to discovery violations. Petitioner's second jury trial in 1996 ended in a guilty conviction, but Petitioner's motion for a new trial was granted because of jury misconduct. Plaintiff-Appellee State of Hawai'i (the prosecution) appealed and the trial court's order granting a new trial was affirmed by the ICA. Petitioner's third trial began on September 20, 1999. .

millimeter on him." Petitioner replied that "he wouldn't do that to family." Larry hit the garage wall three times "[h]ard enough to get lacerations on his knuckles."

The baby awoke at some point during this interchange. Julie told Petitioner that they should leave. Larry then asked him, "[W]hy you leaving for? You scared?" Larry called out an obscenity to Julie and, according to Petitioner, told her, "I will kick your ass. I no care holding baby. I no care baby sick. You better shut up." Petitioner was "upset" and "afraid." He had been told that "Larry was a golden gloves boxer."

As the family headed toward their car, Larry "was pounding on the wall ... and walking back and forth[.]" Julie said, "[Y]ou wait, Larry, you wait." Larry then rushed out of the garage toward Julie, saying, "What you said you f———?" Petitioner was afraid and "had no doubt in [his] mind that Larry was capable of hurting [his] wife [and that i]f [Larry] hurt [Julie], [it would be] automatic that [the] baby would be hurt." He testified that he was afraid for his wife's and child's life when Larry rushed toward them.

Both Petitioner and Julie reached for Julie's purse in the car, where they had earlier placed the gun. Petitioner represented that "the first shot at Larry was a warning shot." Larry did not retreat, but "looked at [Petitioner]" and turned toward him. Petitioner explained that Larry then approached him, making Petitioner fear for his life and causing him to fire at Larry. Petitioner then shot at Larry twice. Petitioner did not think he had killed Larry because "Larry had r[u]n the other way," possibly to obtain his gun.

### B.

The court instructed the jury regarding Petitioner's defense of self-defense in relevant part as follows:

The use of deadly force upon or toward another person is justified when a defendant using such force reasonably believes that deadly force is immediately necessary to protect himself on the present occasion against death or serious bodily injury. The reasonableness of the defendant's belief that the use of such protective force

was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position *under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be.*

(Emphasis added.) Petitioner had proposed virtually the same jury instruction. Regarding Petitioner's defense of defense of others, the court instructed the jury, in part, as follows:

The use of force upon or toward another person is justified to protect a third person when:

(1) Under the circumstances as the defendant reasonably believed them to be, Julie Augustine [sic] would have been justified in using such force to protect herself or Chandelle Augustine [sic]; and

(2) The defendant reasonably believed that his intervention was immediately necessary to protect Julie Augustine [sic] and/or Chandelle Augustine [sic].

The reasonableness of the defendant's belief that the use of such protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position *under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be.*

(Emphasis added.) Again, Petitioner proposed a nearly identical instruction.

### II.

Following his conviction, Petitioner's appeal was assigned to the ICA, which entered its SDO on December 27, 2001, and its Order denying Petitioner's Motion for Reconsideration on January 10, 2002.

### III.

" 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading[.]' " *State v. Crail,* 97 Hawai'i 170, 180, 35 P.3d 197, 207 (2001) (quoting *State v. Gomes,* 93 Hawai'i 13, 18, 995 P.2d 314, 319 (2000)). " 'Erroneous in-

structions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.'" *State v. Aganon,* 97 Hawai'i 299, 302, 36 P.3d 1269, 1272 (2001) (quoting *State v. Sua,* 92 Hawai'i 61, 69, 987 P.2d 959, 967 (1999)) (brackets omitted). "Jury instructions 'to which no objection has been made at trial will be reviewed only for plain error.'" *Id.* (quoting *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)). "If the substantial rights of the defendant have been affected adversely, the error may be considered as plain error." *Id.* Because Petitioner had not objected to the jury instructions in question, we review it on plain error grounds.

### IV.

Petitioner contends that, in its instructions to the jury, the court erroneously failed to include the direction that it was to consider the circumstances Petitioner faced as he *subjectively* believed them to be. We disagree that that part of the instructions advising the jury to consider the justification claims "from the viewpoint of a reasonable person in the defendant's position *under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be"* was prejudicially incorrect. (Emphasis added.)

### V.

HRS "[c]hapter 703 provides for a defense based on the legal concept of justification.[2] ... In most instances, the critical factor in determining whether an actor's conduct is justified is the actor's state of mind or belief respecting facts and circumstances." Supplemental Commentary on HRS § 703–300 (1993). HRS § 703–304 (1993), governing the defense of self-defense or the "[u]se of

force in self-protection," provides in relevant part as follows:

(1) Subject to the provisions of this section and of section 703–308 [regarding the use of force to prevent suicide or the commission of a crime], the use of force upon or toward another person is justifiable when the *actor believes* that such force is immediately necessary for the purpose of protecting himself [or herself] against the use of unlawful force by the other person in the present occasion.

(2) The use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself [or herself] against death, serious bodily injury, kidnaping, rape, or forcible sodomy.

(3) Except as otherwise provided in subsections (4) and (5) of this section,[3] *a person employing protective force may estimate the necessity thereof under the circumstances as he [or she] believes them to be* when the force is used without retreating, surrendering possession, doing any other act which he [or she] has no legal duty to do, or abstaining from any lawful action.

(Emphases added.) HRS § 703–305 (1993), governing the defense of use of force for the protection of others, similarly provides as follows:

(1) Subject to the provisions of this section and of section 703–310, the use of force upon or toward the person of another is justifiable to protect a third person when:

  (a) *Under the circumstances as the actor believes them to be,* the person whom the actor seeks to protect would be justified in using such protective force; and

  (b) The *actor believes* that the actor's intervention is necessary for the protection of the other person.

---

**2.** "Justification" is a "[j]ust, lawful excuse or reason for act or failing to act." *Black's Law Dictionary* 865 (6th ed.1990). The commentary on HRS § 703–301 (1993) explains in part that a defendant claiming justification bears "the burden of producing some credible evidence of the existence of justification" and that, "[i]f the defendant produces such evidence, or if it appears as part of the prosecution's case, the defendant is entitled to have the defense considered by the

jury. The prosecution, however, must prove beyond a reasonable doubt, facts which negative the defense."

**3.** Subsections (4) and (5), relating to the specific parameters of when force is not justifiable (e.g., provoking the use of force), are not pertinent to this case.

. . . .

(Emphases added.)

The definition section to chapter 703, HRS § 703–300, defines "believes" as "reasonably believes," "unless a different meaning is plainly required." As explained by the Supplemental Commentary on HRS § 703–300, the legislature altered the proposed draft of this section "by adding the definition of 'believes.'" This definition of "believes" adopts a "'reasonable [person] standard[.]'" The legislature ostensibly intended that an objective test be applied in cases involving the justifiable use of force. The Supplemental Commentary on HRS § 703–300 recounts that the reasonable person standard was adopted because "[i]t is [the] Committee's finding that the requirement that a person's belief be 'reasonable' for these defenses to be available will provide an objective basis by which to gauge whether or not the use of force was justified." (Quoting Conf. Com. Rep. No. 2, in 1972 House Journal, at 1042.).[4] The intent, then, of the legislature, was to employ a reasonable person standard as "an objective basis by which to *gauge* whether . . . the use of force was justified." *Id.* (emphasis added.) In providing for the application of an objective gauge as to the defendant's actions, the legislature did not preclude the fact finder's consideration of the defendant's own view of the surrounding circumstances, that is to say, the defendant's subjective viewpoint.

## VI.

As Petitioner maintains, the language in our case law would seemingly support a combined subjective and objective test.[5] Under the current subjective prong of the analysis, the fact finder is required to consider the circumstances surrounding the use of force as the defendant subjectively viewed them. *See State v. Kupihea*, 80 Hawai'i 307, 316,

909 P.2d 1122, 1131 (1996) ("Kupihea's *belief* that Kalai was about to shoot him, and the reasonableness of that belief, are facts of consequence to . . . self-defense[.]" (Emphasis in original.)); *State v. Pemberton*, 71 Haw. 466, 477, 796 P.2d 80, 85 (1990) ("The jury . . . must consider the circumstances as the [d]efendant *subjectively* believed them to be at the time he tried to defend himself." (Emphasis added.)); *State v. Faafiti*, 54 Haw. 637, 645, 513 P.2d 697, 703 (1973) (approving of use of jury instruction that explained that the question of whether a defendant acted in self-defense involves "seeing what he [or she] sees and knowing what he [or she] knows"); *State v. Nupeiset*, 90 Hawai'i 175, 186, 977 P.2d 183, 194 (App.1999) (affirming utilization of instruction which advised jurors to consider "the circumstances of which [the d]efendant was aware or as [the d]efendant believed them to be"); *State v. Straub*, 9 Haw.App. 435, 445, 843 P.2d 1389, 1394 (App.1993) ("The situation must be viewed from [the defendant]'s point of view when [he or she] was forced to choose a course of action." (Citation omitted.)).

The objective prong of the analysis requires jurors to determine whether a reasonable person, considering the circumstances as Petitioner subjectively did, would. deem the use of force necessary. *See Kupihea*, 80 Hawai'i at 316, 909 P.2d at 1131 ("[U]nder the theory advanced by Kupihea at trial, the issue was whether Kupihea's belief that Kalai had a gun in his hand and was about to shoot him was reasonable." (Emphasis omitted.)); *Pemberton*, 71 Haw. at 477, 796 P.2d at 85 ("[T]he standard for judging the reasonableness of a defendant's belief for the need to use deadly force is determined from the point of view of a reasonable person in the [d]efendant's position[.]" (Citation omitted.)); *Faafiti*, 54 Haw. at 645, 513 P.2d at 703 (approving of instruction that read, "The

4. The conference committee report states the committee

   ha[d] agreed to amend Section 300, by inserting the reasonable [person] standard with respect to justification for the use of force in self-protection, in the protection of property, and in the protection of others. *It is your Committee's finding that the requirement that a person's belief be "reasonable" for these defenses to be*

   *available will provide an objective basis by which to gauge whether or not the use of force was justified.*
   Conf. Comm. Rep. No. 2, in 1972 House Journal, at 1042 (emphasis added).

5. References to the defense of self-defense would apply as appropriate to the defense of defense of others.

kind of degree of force which a person may lawfully use in self-defense are limited by what a reasonable person in the same situation ... then would believe to be necessary."); *Nupeiset,* 90 Hawai'i at 186, 977 P.2d at 194 (affirming instruction because it "required that the jury evaluate [the d]efendant's belief that the use of force was necessary from the viewpoint of a reasonable person"); *State v. Pavao,* 81 Hawai'i 142, 145, 913 P.2d 553, 556 (App.1996) (in a defense of others case, outlining that the jury must consider the facts "from the objective point of view of a reasonable person"); *State v. Lubong,* 77 Hawai'i 429, 433, 886 P.2d 766, 770 (App.1994) ("This [second] prong is objective; it requires a determination of whether a reasonably prudent person in the same situation as the defendant would have believed that deadly force was necessary for self-protection." (Internal citation omitted.)); *Straub,* 9 Haw.App. at 444, 843 P.2d at 1394 ("The dispositive issue is whether substantial evidence in the record supports the ... decision that ... [the defendant] did not reasonably believe that [his acts] were immediately necessary to protect himself against the use of force[.]" (Citation omitted.)); *State v. Tagaro,* 7 Haw.App. 291, 296, 757 P.2d 1175, 1178 (1987) ("The jury's determination is based on its view of whether or not the defendant's belief in his justification was reasonable." (Citation omitted.)), *overruled on other grounds by, State v. Holbron,* 80 Hawai'i 27, 45, 904 P.2d 912, 930 (1995).

## VII.

As the Model Penal Code (MPC)[6] indicates, a wholly objective test would result in injustice. According to the Code, such a test "might strip" an actor who mistakenly believes that force is necessary in his or her defense, "of any defensive claim, thus permitting ... conviction of a purposeful[, *i.e.,* in-

6. HRS § 703–304 is based on the MPC. *See* Commentary on HRS § 703–304 ("This section substantially adopts the Model Penal Code rules on justification of the use of force in self-protection."). The Code's rendition on self-defense is nearly identical to HRS § 703–304:

Subject to the provisions of this Section and of Section 3.09 [discussed *infra,*] the use of force upon or toward another person is justifiable when the actor *believes* that such force is im-

tentional] offense, even murder." MPC § 3.04 comment 2 (1985). Thus, a strictly objective standard results in culpability where the mens rea requirement of intent may not have been met. *See* MPC § 3.09 comment 2 (1985) ("To convict for a belief arrived at on an unreasonable ground is to convict for negligence."). Limiting the fact finder to consideration of only the actual facts to the exclusion of the actor's belief may result in imposing "liability without culpability". MPC § 3.04 comment 2. An entirely objective approach also conflicts with the fact that, in all other areas of law, a person's actions are judged based, at least in part, on what he or she perceived. *See id.* ("The law is made to govern individuals in their conduct and they must act on their appraisal of a situation, if they are to act at all. This is no less true as to justifying factors than as to other elements of any crime.")

## VIII.

But a wholly subjective test would result in lawlessness because self-defense would be premised only on the actor's "internal beliefs," the effect of which would be to sanction unreasonable conduct:

*In essence, self-defense would always justify homicide so long as the defendant was true to his or her own internal beliefs.* As Professor Susan Estrich has remarked:

If the reasonable person has all of the defender's characteristics, the standard loses any normative component and becomes entirely subjective. *Applying a purely subjective standard in all cases would give free reign to the short-tempered, the pugnacious, and the foolhardy who see threats of harm where the rest of us would not and who blind themselves to opportunities for escape*

mediately necessary for the purpose of protecting himself [or herself] against the use of unlawful force by such other person on the present occasion.

MPC § 3.04 (1962) (emphasis added). While the MPC does not define "believes" as "reasonably believes," the Code and its commentary provide a useful source in construing the justification provisions.

*that seem plainly available.* These unreasonable people may not be as wicked (although perhaps more dangerous than) cold-blooded murderers ... but neither are they, in practical or legal terms, justified in causing death.

[S. Estrich,] *Defending Women,* 88 Mich. L.Rev. 1430, 1435 (1990) (reviewing Cynthia Gillespie, *Justifiable Homicide: Battered Women, Self Defense and the Law* [, Ohio State Univ. Press] (1989)).

*State v. Janes,* 121 Wash.2d 220, 850 P.2d 495, 505 (1993) (emphases added) (brackets omitted) (ellipses points in original).

The objective aspect establishes a standard against which the defendant's belief can be measured.

The objective portion of the inquiry serves the crucial function of providing an external standard. Without it, a jury would be forced to evaluate the defendant's actions in the vacuum of the defendant's own subjective perceptions.

. . . .

*The objective aspect also keeps self-defense firmly rooted in the narrow concept of necessity.* No matter how sound the justification, revenge can never serve as an excuse for murder. "[T]he right of self-defense does not imply the right of attack in the first instance or permit action done in retaliation or revenge." *People v. Dillon,* [24 Ill.2d 122] 180· N.E.2d 503[, 504] ( [Ill.] 1962). Even when justifiable, homicide is an irreversible act.

*Id.* at 505 (emphasis and brackets in original). The objective standard represents precisely the "objective basis by which to gauge" the use of force the legislature sought to incorporate in the definition of "believes" in HRS § 703–300. Supplemental Commentary on HRS § 703–300 (quoting Conf. Com. Rep. No. 2, in 1973 House Journal, at 1042). *See* discussion *infra.*

## IX.

Petitioner argues that "[a]n honest but *unreasonable* belief must never result in a murder conviction" and contends that, "if [a defendant]'s actual belief is not reasonable, his [or her] conduct is reckless (or negligent)." (Emphasis added.) As formulated, our current self-defense test does pose the possibility that a defendant could be acquitted even were his or her subjective understanding of the circumstances absurd.

Because an examination of a defendant's use of force in its subjective aspect must take into account the defendant's view of the circumstances, it could be inferred that the fact finder is wedded to the defendant's viewpoint of the situation, no matter how illogical or irrational it may be. Thus, under the current formulation, the jury is seemingly foreclosed from considering whether the defendant's interpretation of the circumstances was reasonable.

Refinement of our self-defense test would curb the likelihood of such results. In *People v. Goetz,* 68 N.Y.2d 96, 506 N.Y.S.2d 18, 497 N.E.2d 41 (N.Y.1986), the New York Court of Appeals considered whether a justification charge to a grand jury was appropriate. The charge advised the grand jurors "to consider whether Goetz's conduct was that of a 'reasonable man in Goetz's situation," *Id.* at 104, 506 N.Y.S.2d 18, 497 N.E.2d 41 (internal quotation marks and brackets omitted). The Court of Appeals ruled this was an accurate statement of the law, explaining that the defendant's understanding of the surrounding circumstances must be rationally based:

Interpreting the statute [7] to require only that the defendant's belief was "reasonable to him," as done by the plurality below, would hardly be different from requiring only a genuine belief; in either case, the defendant's own perceptions could completely exonerate him from any criminal liability. We cannot lightly impute to the

---

**7.** New York Penal Law § 35.15 was cited to as the law that applied in *Goetz.* It provides that "a person may use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person[.]" *Goetz,* 68 N.Y.2d at 105–06, 506 N.Y.S.2d 18, 497 N.E.2d 41 (quoting New York Penal Law § 35.15(1) (ellipsis points and emphasis omitted)).

Legislature an intent to fundamentally alter the principles of justification to *allow the perpetrator of a serious crime to go free simply because that person believed his actions were reasonable and necessary to prevent some perceived harm. To completely exonerate such an individual, no matter how aberrational or bizarre his thought patterns, would allow citizens to set their own standards for the permissible use of force.* It would also allow a legally competent defendant suffering from delusions to kill or perform acts of violence with impunity, contrary to fundamental principles of justice and criminal law. *Id.* at 111, 506 N.Y.S.2d 18, 497 N.E.2d 41 (emphasis omitted) (emphasis added). According to the *Goetz* court, the commission which developed the modern New York penal code "specifically equated 'he reasonably believes' with having a *reasonable ground for believing.*" *Id.* at 113, 506 N.Y.S.2d 18, 497 N.E.2d 41 ·(brackets and citation omitted) (emphasis added). The *Goetz* rationale was further explained in *People v. Wesley*, 76 N.Y.2d 555, 561 N.Y.S.2d 707, 563 N.E.2d 21 (N.Y.1990):

> To determine whether a defendant's conduct was justified under Penal Law § 35.15, a two-step inquiry is required. The jury must first determine whether defendant *actually believed* that deadly force was necessary *see, Goetz, supra,* at 115, 506 N.Y.S.2d 18, 497 N.E.2d 41. If the People fail to meet their burden of proving that defendant *did not* actually believe that the use of deadly force was necessary, then the jury must move to the second step of the inquiry and assess the reasonableness of this belief. *Id.*, at 115, 506 N.Y.S.2d 18, 497 N.E.2d 41.[8]

*Id.* at·559, 561 N.Y.S.2d 707, 563 N.E.2d 21 (italicized emphasis in original) (emphases added). This approach would eliminate any ambiguity that could lead to absurd results. Thus, a three-part test should be applied in self-defense cases in this jurisdiction. First, under the subjective portion of the test, it must be asked whether a defendant's belief that self-defense was necessary under the circumstances as he or she believed them to be, is actual and real. *Cf. Lubong,* 77 Hawai'i at 433, 886 P.2d at 770 ("The first prong is subjective; it requires a determination of whether the defendant had the requisite belief that deadly force was necessary[.]") Second, assuming it was, the fact finder must consider whether the prosecution has proved that the defendant's view of the circumstances was unreasonable. If the prosecution fails to do so, then the fact finder must decide whether the prosecution has established that a reasonable person under those circumstances would believe the force used was necessary. *See* HRS § 703–304(3).

. This approach avoids the anomalous result of an acquittal where a defendant's actual understanding of the circumstances may be "aberrational or bizarre." *Goetz,* 68 N.Y.2d at 111, 506 N.Y.S.2d 18, 497 N.E.2d 41. The test also allows for acquittal where the defendant's actual understanding of the circumstances was wrong, but not unreasonable. Hence, any necessary use of force based upon a reasonable but mistaken interpretation of the circumstances should result in an acquittal.[9] As refined, this test maintains

---

8. In both *Goetz* and *Wesley*, it was pointed out that the defendant's own experiences should be taken into account when considering the reasonableness of his or her actions. *See Goetz,* 68 N.Y.2d at 114, 506 N.Y.S.2d 18, 497 N.E.2d 41 (stating that "any relevant knowledge the defendant had about that person," *i.e.,* the "potential assailant," is included when addressing the circumstances the defendant faced); *Wesley,* 76 N.Y.2d at 559, 561 N.Y.S.2d 707, 563 N.E.2d 21 (explaining that "[e]vidence of a defendant's 'circumstances' includes relevant knowledge that the defendant may have had about the victim, the physical attributes of all those involved in the incident, and any prior experiences that the defendant may have had" which may contribute to a reasonable understanding of the situation.)

9. A caveat to this is where the actor is reckless or negligent in his or her belief, in which case he or she may be guilty of a crime with a reckless or negligent mens rea:

> When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under sections 703–303 to 703–309 but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of the actor's use of force, the justification afforded by those sections is unavailable in a prosecution for an offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

the subjective and objective requirements of our jurisprudence while avoiding the risk of absurd outcomes. As discussed *infra*, justice mandates the retention of the subjective and objective portions of the self-defense test.

## X.

### A.

Based on the foregoing, the court's instruction to the jury that the "reasonable person in the defendant's position" should view "the circumstances [as] the defendant was aware [of them] or as the defendant reasonably believed them to be" was partially correct. The phrase "as the defendant reasonably believed them to be" was a correct statement of the law insofar as that phrase satisfies the requirement that Petitioner's actual understanding of the circumstances must be subjected to a reasonable person standard.[10]

However, the phrase "was aware" inadequately conveys to the jurors that Petitioner's subjective understanding of the situation must be evaluated from a reasonable person's point of view. "Aware" means "having or showing realization, perception, or knowledge." *Webster's Collegiate Dictionary* 81

HRS § 703–310(1) (1993).

**10.** As mentioned, Petitioner also contends that the prosecution's misstatements of the law in closing argument contributed to the erroneous jury instructions. For example, Petitioner contends that the prosecutor misrepresented the law when stating that "[y]ou determine reasonableness by taking a reasonable person, not the defendant, but a reasonable person, and *put him in his shoes that day.*" (Emphasis added.) However, insofar as the prosecutor's comments suggested an objective evaluation of Petitioner's subjective belief, they were an accurate representation of the law and we reject Petitioner's argument otherwise.

**11.** The issue presented in *Pemberton, i.e.,* whether the defendant can be held responsible for matters in the evidence for which he or she was not aware, is not an issue in this case.

**12.** The words "was aware" in the self-defense instruction would not encompass knowledge of the attendant circumstance of the crime charged. First, assuming *arguendo* that the phrase refers to attendant circumstances, the use of the disjunctive "or" allows for exculpation of a defendant based *either* on his or her actual understanding of the circumstances, no matter how irrational, *or* on the reasonable interpretation of

(10th ed.1993). Thus, a defendant is aware of circumstances when he or she exhibits either a "realization, perception, or knowledge" of those circumstances. Conceivably, awareness of certain circumstances is not necessarily congruent with a belief in those circumstances. "Believe" means "to accept as true, genuine, or real." *Id.* at 104, 506 N.Y.S.2d 18, 497 N.E.2d 41. In this sense, the words "was aware" may fail to communicate the jury's duty to view the circumstances from the defendant's perspective. *See Pemberton,* 71 Haw. at 477–78, 796 P.2d at 85 (describing as erroneous an instruction which "allowed the jury to consider all the circumstances shown by the evidence, regardless of whether or not [d]efendant was aware of them.").[11]

Even were the words "was aware" deemed sufficient to evince a subjective viewpoint, the term "or" permitted the jury to rest its decision on this part of the instruction. This would not be a correct statement of the law inasmuch as instructing a jury that it should view "the circumstances [as] the defendant was aware [of them]" fails to inform it that the defendant's subjective understanding of the situation must be evaluated from a reasonable person's perspective.[12]

the circumstances. Plainly, this was not the intent of the legislature, *see* discussion *supra,* and would result in inconsistent treatment of defendants who claim self-defense.

Second, consideration of the circumstances "of which the defendant was aware" may be misread as reflecting a mental state *to be applied to the attendant circumstances.* HRS § 702–205 (1993) defines the elements of the offense as "such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) [a]re specified by the definition of the offense, and (b) [n]egative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction)." The original Commentary on HRS § 702–205 appeared to support the notion that a defendant's mistaken understanding of the circumstances would warrant acquittal on murder charges, but nevertheless clarified that such an understanding was germane to the state of mind requirement *to be applied* to the attendant circumstances, not the circumstances themselves:

> The effect of including within the definition of "element" facts ... which negative a defense on the merits ... is to postulate an equivalence of the state of mind required to establish a particular offense regardless of the diverse circumstances giving rise to the charge. Thus, if the crime of murder requires that the defendant

B.

The court's instructions mirror the Hawai'i

act intentionally or knowingly with respect to each element, one who intentionally kills another, recklessly mistaken that the other's conduct threatens one's life, would not be guilty of murder, although one might be guilty of a crime requiring only recklessness. *Since the defendant must act intentionally or knowingly with respect to attendant circumstances which negative the defense of self-defense, conviction for murder would fail unless it could be proven that defendant knew or believed that the defendant's assailant's conduct did not in fact threaten serious bodily harm or death.*

*Id.* (emphases added). As was later clarified in a supplemental commentary, however, a defendant's unreasonable misunderstanding of circumstances resulting in the use of force in self defense would *not* absolve him or her of the crime of murder:

The Legislature enacted § 702–205 of the Proposed Draft of the Code without change; however, in Chapter 703, dealing with defenses of justification, the Legislature departed from the Proposed Draft and *required an objective assessment of the defendant's state of mind,* or a *"reasonable belief"* on the defendant's part, *respecting the attendant circumstances which justify conduct* otherwise deemed unlawful. Therefore, the example set forth in the ... above commentary is no longer applicable. Supplemental Commentary on HRS § 702–205. Ultimately, then, the view that the phrase "was aware" reflects an understanding of the attendant circumstances of the crime fails because (1) it dispenses with the requirement that the surrounding circumstances as perceived by the defendant should be reasonable and (2) it mistakenly implies a mental state to be applied to the attendant circumstances.

13. HAWJIC 7.01 on self-defense states, in part, as follows:

Justifiable use of force—commonly known as self-defense—is a defense to the charge of (specify charge and its included offenses except those involving a reckless state of mind). The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justifiable. If the prosecution does not meet its burden then you must find the defendant not guilty.

[The use of force upon or toward another person is justified when a person reasonably believes that such force is immediately necessary to protect himself/herself on the present occasion against the use of unlawful force by the other person. The reasonableness of the defendant's belief that the use of such protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was

Pattern Jury Instructions—Criminal (HAWJIC) on self-defense [13] and defense of others. [14] We are not bound by pattern jury

aware or as the defendant reasonably believed them to be.]

[The use of deadly force upon or toward another person is justified when a person using such force reasonably believes that deadly force is immediately necessary to protect himself/herself on the present occasion against [death] [serious bodily injury] [kidnaping] [rape] [forcible sodomy]. The reasonableness of the defendant's belief that the use of such protective force was immediately necessary shall be determined from the *viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be.*]

[The use of deadly force is not justifiable if the defendant, with the intent of causing death or serious bodily injury, provoked the use of force against himself/herself in the same encounter, or if the defendant knows that he/she can avoid the necessity of using such force with complete safety by retreating.]

(Underscoring and brackets in original.) (Italicized emphasis added.)

14. HAWJIC 7.02 regarding the defense of others reads, in part:

Justifiable use of force in defense of another person is a defense to the charge of (specify charge and its included offenses except those involving a reckless state of mind). The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justifiable. If the prosecution does not meet its burden, then you must find the defendant not guilty.

The use of force upon or toward another person is justified to protect a third person when:

(1) Under the circumstances as the defendant reasonably believed them to be, (the third person) would have been justified in using such force to protect himself/herself; and

(2) The defendant reasonably believed that his/her intervention was immediately necessary to protect (the third person).

The reasonableness of the defendant's belief that the use of such protective force was immediately necessary shall be determined from the *viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be.*

[(The third person) would have been justified in using force upon or toward (complaining witness) if he/she reasonably believed that such force was immediately necessary to protect himself/herself on the present occasion against the unlawful force by (complaining witness).]

[(The third person) would have been justified in using deadly force upon or toward (the

instructions. *See Nupeiset*, 90 Hawai'i at 181 n. 9, 977 P.2d at 189 n. 9. Whereas the court's use of the phrase "of which the defendant was aware" in the instruction was incorrect, HAWJIC 7.01, as worded, is otherwise consistent with our case law on justification defenses.

In *State v. Smith*, 91 Hawai'i 450, 984 P.2d 1276 (App.1999), the question was whether or not an instruction, basically identical to HAWJIC 7.01, properly allowed the defendant to argue his "mistake of fact" defense that "he may have mistakenly believed that the [victim]s were coming forward to seriously harm him." *Id.* at 463, 984 P.2d at 1289 (internal quotation marks and brackets omitted). The ICA characterized Smith's claim as an argument "that he may have intentionally engaged in prohibited conduct because he mistakenly believed he was acting in self-defense." *Id.* at 463–64, 984 P.2d at 1289–90. It concluded that "Smith's mistaken belief that the [victim]s were attacking him is covered under the defense of self-defense. The record shows that the jury was properly instructed concerning Smith's defense of self-defense." *Id.* at 464, 984 P.2d at 1290. To reach its conclusion, the *Smith* court quoted the supplemental commentary to HRS § 702–205:

> Self-defense is a justification defense. With respect to justification defenses, the Supplemental Commentary to § 702–205 (1993) notes as follows:
>
> > The Legislature enacted § 702–205 of the Proposed Draft of the Code without change; however, in Chapter 703 dealing with defenses of justification, the Legislature departed from the Proposed Draft and *required an objective assessment of the defendant's state of mind, or a "reasonable belief" on the defendant's part, respecting the attendant circumstances* which justify conduct otherwise deemed unlawful.

*Id.* (emphasis added). *Smith* thus supports the conclusion reached here: that HAWJIC 7.01, for the most part, properly applies a reasonable person standard to the assessment of Petitioner's subjective belief. However, inasmuch as *Smith* impliedly approved the "aware[ness]" language in the pattern instruction, it should be overruled to that extent.

## XI.

While the self-defense instruction's use of the phrase "of which the defendant was aware" inappropriately advised the jury that it could consider Petitioner's subjective belief without addressing the reasonableness of that belief, that error could not have prejudiced Petitioner. The phrase allowed the jury to accept Petitioner's point of view without assessing the reasonableness of it, and therefore benefitted Petitioner. Hence, I would affirm the ICA's decision with regard to the instruction, despite the error in the charge. *See Nupeiset*, 90 Hawai'i at 185, 977 P.2d at 193 ("[T]he Hawai'i Supreme Court has held a defendant 'cannot complain of an erroneous instruction which benefitted him [or her].'" (Quoting *State v. Tyrrell*, 60 Haw. 17, 29, 586 P.2d 1028, 1036 (1978).)) (Brackets omitted.).

## XII.

Petitioner also contends that the instruction on murder in the second degree should have included the element that the crime was committed "without justification or mitigation." *See State v. Jones*, 96 Hawai'i 161, 169, 29 P.3d 351, 359 (2001) ("[T]he attendant circumstance of lack of legal consent was an element of the crime charged, and thus, the trial court was required to instruct the jury as to the defense of consent with respect to each of those counts.") However, the court's failure to include an element negativing the defense of self defense does not appear to have affected the substantial rights of Peti-

complaining witness) if he/she reasonably believed that deadly force was immediately necessary to protect himself/herself on the present occasion against [death] [serious bodily injury] [kidnapping] [rape] [forcible sodomy].]

[The use of deadly force is not justifiable if the defendant, with the intent of causing death or serious bodily injury, provoked the use of force against himself/herself in the same encounter, or if the defendant knows that he/she can avoid the necessity of using such force with complete safety by retreating.]
(Underscoring and brackets in original.) (Italicized emphasis added.)

tioner in light of the separate instruction as to that defense. *See State. v. Pinero,* 75 Haw. 282, 292, 859 P.2d 1369, 1374 (1993) ("[T]he instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. The omissions or·inaccuracies of one instruction may be cured by the contents of the other instructions, or some of them[.]" (Citation omitted.)); *State v. Horswill,* 75 Haw. 152, 160, 857 P.2d 579, 583 (1993) ("Although we have stated that a defendant is entitled to an instruction on consent where there is any evidence of consent in a trial for sexual assault in the first degree, we have not stated that the instruction must be included in the elements instruction." (Citation. omitted.)). The defenses of self and others were plainly and clearly set forth in other instructions herein. Therefore, Petitioner was not prejudiced by the absence of the self-defense defense in the elements instructions.

## XIII.

Defendant's remaining points do not constitute reversible error.