**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000634**
**27-FEB-2025**
**08:41 AM**
**Dkt. 174 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


STATE OF HAWAI'I, Plaintiff-Appellee, v.
BRANDON REIS, Defendant-Appellant


NO. CAAP-19-0000634


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-17-0001205)


FEBRUARY 27, 2025


LEONARD, ACTING CHIEF JUDGE, HIRAOKA AND WADSWORTH, JJ.


OPINION OF THE COURT BY HIRAOKA, J.


Brandon **Reis** was indicted for Attempted Murder in the Second Degree, among other crimes. He claimed he was defending himself. A jury found him guilty as charged. He contends the jury was erroneously instructed — based on Hawai'i Standard Jury Instructions Criminal (**HAWJIC**) 7.01A — that use of deadly force in self-defense must be "immediately necessary." We hold, based on the plain language and legislative history of Hawaii Revised Statutes (**HRS**) § 703-304 (2014), that the challenged instruction

was erroneous. There was a reasonable possibility the error contributed to Reis's conviction. The evidence was sufficient to support the verdict. Accordingly, we vacate the August 29, 2019 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit[1] and remand for a new trial.

## I. BACKGROUND

A grand jury indicted Reis for **(1)** Attempted Murder in the Second Degree;[2] **(2)** Carrying or Use of Firearm in the Commission of a Separate Felony;[3] **(3)** Ownership or Possession Prohibited of any Firearm or Ammunition by a Person Convicted of Certain Crimes;[4] **(4)** Place to Keep Pistol or Revolver;[5] and **(5)** Ownership or Possession Prohibited of any Firearm or Ammunition by a Person Indicted for Certain Crimes[6]. The indictment was based on alleged events of June 22, 2016.

Reis stipulated to these facts before trial:

> On January 28, 2002, [Reis] was convicted of a felony.
>
> On January 29, 2013, [Reis] was under indictment for a felony.
>
> On June 22, 2016, [Reis] knew that he had been convicted of a felony.
>
> On June 22, 2016, [Reis] knew that he was under indictment for a felony.

---

[1]    The Honorable Karen T. Nakasone presided.

[2]    HRS §§ 705-500 (2014), 707-701.5 (2014), and 706-656 (2014).

[3]    HRS § 134-21 (2011).

[4]    HRS § 134-7(b), (h) (2011).

[5]    HRS § 134-25 (2011).

[6]    HRS § 134-7(b), (h).

> On June 22, 2016, [Reis] did not have a license to carry a pistol, revolver, or ammunition on his person issued by the Chief of Police for the City and County of Honolulu, State of Hawaiʻi.
>
> On June 22, 2016, [Reis] did not have a firearm registered to him.

Reis did not stipulate he carried, used, owned, or possessed a firearm or ammunition on June 22, 2016.

Trial began on October 23, 2018. Reis did not testify, but argued he acted in self-defense. A jury found him guilty as charged on all counts. The trial court dismissed counts 4 and 5 based on merger. Reis was sentenced to life with the possibility of parole on count 1 (attempted murder), 20 years on count 2 (use of firearm), and 10 years on count 3 (possession of firearm), to be served concurrently. This appeal followed.[7]

## II. POINTS OF ERROR

Reis states five points of error: **(1)** the Tachibana/Torres colloquy[8] was inadequate; **(2)** the jury was instructed that use of deadly force in self-defense must be "immediately necessary"; **(3)** the trial court refused to give his

---

[7]    Disposition of this appeal was significantly delayed because of two defaults in filing the opening brief, three remands to the circuit court for appointment of substitute counsel for Reis, an extension of time to file transcripts, and several extensions of time to file the opening brief requested by Reis's new court-appointed appellate counsel.

[8]    See Tachibana v. State, 79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995) ("[W]e hold that in order to protect the right to testify under the Hawaiʻi Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify.") (footnote omitted); State v. Torres, 144 Hawaiʻi 282, 294-95, 439 P.3d 234, 246-47 (2019) ("[W]e hold that trial courts are required to engage in an on-the-record colloquy with a defendant when the defendant chooses to testify to ensure that a waiver of the right not to testify is knowing, intelligent, and voluntary.").

proposed jury instruction on ignorance or mistake of fact; **(4)** the trial court denied his motion in limine to preclude Kyen **Knowles**'s girlfriend from testifying about her telephone conversation with Knowles; and **(5)** the trial court denied his motion for judgment of acquittal based on insufficient evidence.

Points (2) and (5) are dispositive.

### III. STANDARDS OF REVIEW

#### A.   Jury Instructions

The jury instruction at issue was proposed by Reis. But "the duty to properly instruct the jury lies with the trial court[.]" State v. Nichols, 111 Hawaiʻi 327, 335, 141 P.3d 974, 982 (2006). "Where instructions were not objected to at trial, if the [defendant] overcomes the presumption that the instructions were correctly stated, the rule is that such erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." Id. at 334-35, 141 P.3d at 981-82.

#### B.   Sufficiency of Evidence

We consider the evidence in the strongest light for the prosecution when reviewing its legal sufficiency to support a conviction. State v. Sheffield, 146 Hawaiʻi 49, 53, 456 P.3d 122, 126 (2020). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." Id.

## IV. DISCUSSION

**A. The jury instruction on use of deadly force in self-defense was erroneous.**

**(1)** Reis claimed he acted in self-defense when he fired a gun in Knowles's direction. He contends the jury was erroneously instructed that use of deadly force in self-defense must be "immediately necessary."

HRS § 703-304 provides, in relevant part:

> (1) Subject to the provisions of this section and of section 703-308 [concerning use of force to prevent suicide or the commission of a crime], the use of **force** upon or toward another person is justifiable when the actor believes that such force is **immediately necessary** for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.
>
> (2) The use of **deadly force** is justifiable under this section if the actor believes that deadly force is **necessary** to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.

(Emphasis added.)

The jury instruction at issue stated:

> The use of **deadly force** upon or toward another person is justified if the defendant reasonably believes that deadly force is **immediately necessary** to protect himself on the present occasion against death or serious bodily injury or kidnapping. The reasonableness of the defendant's belief that the use of protective **deadly force** was **immediately necessary** shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be when the deadly force was used.

(Emphasis added.)

The instruction was modified from HAWJIC 7.01A, which states, in relevant part:

5

> The use of **deadly force** upon or toward another person is justified if the defendant reasonably believes that deadly force is **immediately necessary** to protect himself/herself on the present occasion against [death] [serious bodily injury] [kidnapping] [rape] [forcible sodomy].  The reasonableness of the defendant's belief that the use of protective **deadly force** was **immediately necessary** shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be when the deadly force was used.

(Emphasis added.)

Reis cites In re DM, 152 Hawai‘i 469, 526 P.3d 446 (2023), where the supreme court noted:

> Hawai‘i Standard Jury Instructions, Criminal (HAWJIC) 7.01A misstates HRS § 703-304(2).  For deadly force cases, it adds the adverb "immediately."

Id. at 477 n.13, 526 P.3d at 454 n.13.  But cf. State v. DeLeon, 131 Hawai‘i 463, 487, 319 P.3d 382, 406 (2014) (stating that "the jury instruction that the circuit court provided was based on then-current HAWJIC 7.01, which this court has upheld as 'fully consonant with the controlling statutory and case law of this state.'" (footnote omitted) (quoting State v. Augustin, 101 Hawai‘i 127, 127, 63 P.3d 1097, 1097 (2002)).  The part of HAWJIC 7.01A at issue here is the same as the corresponding part of HAWJIC 7.01.  But neither DeLeon nor Augustin involved the "necessary vs. immediately necessary" deadly force issue.

In re DM was a family court case involving a juvenile defendant (where there is no jury) so jury instructions were not at issue.  "'Obiter dictum' is '[a] judicial comment made while delivering a judicial opinion, but *one that is unnecessary to the decision in the case and therefore not precedential* (although it

may be considered persuasive).'" State v. Hussein, 122 Hawai‘i 495, 533, 229 P.3d 313, 351 (2010) (Moon, C.J., concurring in part and dissenting in part) (quoting Black's Law Dictionary 1102 (8th ed. 2004)). We are not bound by In re DM footnote 13. Nor are we bound by DeLeon or Augustin, because neither decided the "necessary vs. immediately necessary" issue.

We hold that the self-defense instruction given to the jury misstated the plain language of HRS § 703-304(2), and was contrary to legislative intent. When we interpret a statute, we start with "the language of the statute itself." Barker v. Young, 153 Hawai‘i 144, 148, 528 P.3d 217, 221 (2023). "[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning."[9] Id. The plain language of HRS § 703-304(2) justifies a person's use of deadly force if the person reasonably[10] "believes that deadly force is necessary to protect [themself] against death, serious bodily injury, kidnapping, rape, or forcible sodomy." The adverb "immediately" does not modify the adjective "necessary" in subsection (2) of the statute, but it did in the deadly-force jury instruction.

"[T]he trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in

---

[9] This canon ensures that members of the public can read a statute and conform their conduct according to its plain language, without having to read legislative committee reports or conduct other legal research.

[10] For purposes of HRS § 703-304, "believes" means "reasonably believes." HRS § 703-300 (2014).

applying that law to the facts of the case." State v. Metcalfe, 129 Hawai'i 206, 230, 297 P.3d 1062, 1086 (2013). That leads us to ask: Why did the legislature omit the word "immediately" from HRS § 703-304(2)? To find the answer, we may refer "to extrinsic aids in determining legislative intent, such as legislative history[.]" Barker, 153 Hawai'i at 148, 528 P.3d at 221.

The legislative history reveals the reason for the omission and confirms our plain-language analysis. In 1975, HRS § 703-304(2) did not contain the word "immediately." That was a subject of S.B. No. 516 (1975), introduced to amend various sections of the Hawai'i Penal Code. The senate bill proposed adding the word "immediately" to subsection (2):

> (2) The use of deadly force is justifiable under this section if the actor believes that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.

S.B. No. 516, S.D.1 at 3, 8th Leg., Reg. Sess. (1975).

The Senate Judiciary Committee explained:

> Section 703-704 [sic] was amended for purposes of clarification. At present, subsection (1) requires that the actor believe that the use of defensive force is immediately necessary. In subsection (2) the word "immediately" is absent. This has given rise to the contention that for deadly defensive force to be used, the defendant need not believe that the use of deadly force was immediately necessary to protect himself. This contention is erroneous but plausible because of the absence of the word "immediately" in subsection (2). Therefore, the amendment is necessary.

S. Stand. Comm. Rep. No. 590, in 1975 Senate Journal, at 1057.

The House Judiciary Committee disagreed:

> Your Committee . . . made the following changes to S.B. No. 516, S.D.1.

> 1. The word "immediately" on Page 3 of the bill was deleted. Adding the requirements that a person being attacked determine the immediacy of the need to use deadly force presents to [sic] great a burden upon that person. Such a person is already forced into a position of fear and apprehension that would make a reasoned determination of immediacy impossible.

H. Stand. Comm. Rep. No. 720, in 1975 House Journal, at 1306-07. The Senate disagreed with the House draft. A conference committee was appointed. The conference draft kept the House's change. The adverb "immediately" remained missing from subsection (2).

The State argues the jury instruction is supported by the Model Penal Code, and a ruling that the instruction was erroneous would lead to absurd results. Those arguments are not persuasive given the clear legislative intent to differentiate the justification for use of *deadly force* to protect against specific harms and offenses — death, serious bodily injury, kidnapping, rape, or forcible sodomy — from use of force in general to protect against any unlawful force.[11]

We hold that use of the adverb "immediately" before the adjective "necessary" in the deadly-force instruction was contrary to the plain language of HRS § 703-304(2) and the legislature's intent to omit the adverb, and was thus error. HAWJIC 7.01A misstates the law in that respect, and should no longer be used by our trial courts.

---

[11] "Unlawful force" means "force which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or would constitute an offense except for a defense not amounting to a justification to use the force. Assent constitutes consent, within the meaning of this section, whether or not it otherwise is legally effective, except assent to the infliction of death or serious or substantial bodily injury." HRS § 703-300.

**(2)** "[O]nce instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction[.]" Nichols, 111 Hawaiʻi at 337, 141 P.3d at 984. Reis did not testify, so the jury had to consider other evidence to determine whether "a reasonable person in [Reis's] position under the circumstances of which [Reis] was aware or as [Reis] reasonably believed them to be" would believe "that the use of protective deadly force was immediately necessary[.]"

The evidence showed that Reis was part of a group of men who argued with Knowles at a Kalihi fast food restaurant. Someone challenged someone to fight. But there was no fight, and everyone left. State's Exhibit 1, footage from a surveillance camera at a business on Waterhouse Street in Kalihi, showed what happened about an hour and a half later. A red car comes down Waterhouse Street and parks on the far side. A silver Lexus appears. A male — allegedly Reis — gets out of the red car as the Lexus is parking on the near side. The male starts crossing Waterhouse Street and appears to remove an object from his shoulder bag. The Lexus reverses out of its parking space, turning as if to continue down Waterhouse Street. Without breaking stride, the male walks around the reversing Lexus, raises his right arm, points it at the Lexus, and appears to fire a shot into the rear passenger door toward the driver, later identified as Knowles. Knowles opens the door while the Lexus is

still moving backwards, gets out, and is hit by the open door. Knowles falls and is pinned under the left front wheel. The person alleged to be Reis walks around the front of the Lexus and looks at Knowles, who is pinned under the wheel and flailing his legs. Reis runs to the red car and leaves. This all happens in about 30 seconds.

The defense argued that Knowles had followed Reis to Waterhouse Street:

> A car coming towards him, driven by the man who had called him and -- Brandon and his friends out, the 5-foot-10, 256-pounder, which we know Brandon is not that size, who bragged that he could roll with the best of them, had followed Brandon for an hour and a half. He was scared. Couldn't retreat. It was too late. Brandon -- Knowles did not give Brandon the chance to retreat when he suddenly reversed towards him.
>
> Think about it. When you think about it from Brandon's point of view, the car was coming right at him. Just showing the gun didn't stop him. So he had to choose between firing a warning shot or risk being run over and attacked. And only when the Lexus was almost on him, Brian fired -- I mean, Brandon fired once. And it was an understandable choice, given the situation that Knowles had placed him in.

The State argued:

> When you use deadly force, it must be immediately necessary, not in 30 seconds, not in a minute, not in ten seconds. That moment. You cannot use a gun and shoot at somebody unless it is immediately necessary. Essentially you have to have no other choice but then to shoot this person or shoot at this person.

A jury could have found, based on the evidence, that although Reis's use of deadly force may not have been *immediately* necessary, Reis could reasonably have believed it was *necessary* to use deadly force to protect himself against death or serious bodily injury posed by a physically intimidating person with whom

he had argued, and who had been following him for an hour and a half. There was a reasonable possibility the error contributed to Reis's conviction.

### B. There was substantial evidence to support the verdict.

The double jeopardy clause of article I, section 10 of the Hawaiʻi Constitution requires that we address Reis's claim of insufficiency of the evidence before remanding for a new trial because of trial error. Sheffield, 146 Hawaiʻi at 61, 456 P.3d at 134.

We acknowledge that Reis challenges the denial of his motion in limine to preclude hearsay testimony from Knowles's girlfriend. She spoke to Knowles on the phone during the argument at the fast food restaurant. Knowles described the person he was arguing with; the description matched Reis. Even without considering that testimony, the evidence was sufficient to support the verdict.

A person commits the offense of Attempted Murder in the Second Degree if the person intentionally engages in conduct which, under the circumstances as the person believes them to be, is a substantial step to intentionally or knowingly cause the death of another person. HRS §§ 705-500(1)(b), 707-701.5(1). State's Exhibit 1 (the surveillance video) shows a person alleged to be Reis raising his arm and firing what appears to be a pistol toward Knowles's Lexus. A police officer who had previous contacts with Reis identified him and his red car as appearing in

State's Exhibit 1. A witness testified she found an object that "looked like a casing of some kind" in the middle of Waterhouse Street the evening of the incident, and reported it to the police. An HPD evidence specialist recovered the bullet casing where the incident occurred. An HPD criminalist identified gunshot residue found on Knowles's Lexus. This evidence, and the reasonable inferences that could be drawn from it, considered in the strongest light for the prosecution, was sufficient to support the verdict.

## V. CONCLUSION

The jury was erroneously instructed that use of deadly force in self-defense must be "immediately necessary." There was a reasonable possibility the error contributed to Reis's conviction. The evidence and the reasonable inferences that could be drawn from it, considered in the strongest light for the prosecution, was sufficient to support the verdict. The August 29, 2019 Judgment of Conviction and Sentence is vacated, and this case is remanded for a new trial.

On the briefs:

Dwight C.H. Lum,
for Defendant-Appellant.

Robert T. Nakatsuji,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge